PRACTICAL POLITICAL CONSULTING, INC v
SECRETARY OF STATE

Docket No. 291176. Submitted November 10, 2009, at Lansing. Decided
March 9, 2010, at 9:05 a.m.

Practical Political Consulting, Inc., brought an action in the
Ingham Circuit Court, Joyce A. Draganchuk, J., against the
Secretary of State and the office of the Secretary of State,
alleging that the defendants wrongfully denied plaintiff's March
26, 2008, request under the Freedom of Information Act
(FOIA), MCL 15.231 *et seq.*, for "a copy of all vote history of the
[January 15, 2008] presidential primary including which ballots
each voter selected (D[emocratic]) or R[epublican])." Defen-
dants denied the request on the bases that the party preference
information collected during the primary was not a public
record as defined by FOIA and was exempt from disclosure
under FOIA's privacy exemption, MCL 15.243(1)(a), and statu-
tory exemption, MCL 15.243(1)(d). The trial court denied
defendants' motion for summary disposition and entered a
judgment against defendants. Defendants appealed, asserting
that the records sought were exempt from disclosure under the
privacy and statutory exemptions from disclosure of FOIA.
Defendants did not assert that the records sought were not
public records.

The Court of Appeals *held*:

1. MCL 168.615c(1), as amended by 2007 PA 52, required at
the time of the 2008 presidential primary election that, in order to
vote, an elector must indicate in writing at the time the elector
appears to vote which participating political party ballot the
elector wished to vote.

2. MCL 168.615c(3), as added by 2007 PA 52, provided at the
time of the 2008 presidential primary election that the Secretary of
State was required to develop a procedure for city and township
clerks to use when keeping a "separate record" at the primary that
contained the printed name, address, and qualified voter file
number of each elector and the participating political party ballot
selected by the elector.

3. 2007 PA 52, enacting § 2, repealed the 1995 FOIA provision

that provided in MCL 168.495a(1), as amended by 1995 PA 213, for the removal from the precinct registration file, the master registration file of the elector, and the precinct registration list an elector's prior declaration of a party preference or no party preference, and which provided in MCL 168.495a(2), as amended by 1995 PA 213, that beginning on November 29, 1995, a person making a request under FOIA was not entitled to receive a copy of a portion of a voter registration record that contains a declaration of party preference or no party preference by an elector and a clerk or any other person shall not release a copy of a portion of a voter registration record that contains a declaration of party preference or no party preference of an elector.

4. Although the changes to the election law adopted in 2007 for the 2008 presidential primary repealed the 1995 FOIA provision and substituted an exemption from disclosure for the information acquired or in the possession of a public body that indicated which participating political party ballot an elector selected at a presidential primary, after the 2008 primary, a federal court declared part of 2007 PA 52 unconstitutional. Because 2007 PA 52 contained a nonseverability clause, 2007 PA 52 became null and void and the 1995 FOIA provision came back into effect.

5. Under MCL 168.495a(2), as amended by 1995 PA 213, the questions presented by plaintiff's request are, first, was the March 26, 2008, FOIA request a request for a copy of an identifiable public record specifically described and exempted from disclosure under MCL 168.495a(2), as amended by 1995 PA 213? Second, even if the March 26, 2008, FOIA request was not a request for a copy of indentifiable public record specifically described and exempted from disclosure under amended § 495a(2), was the information in that public record specifically described and exempted from disclosure under amended § 495a(2)?

6. The public records sought by plaintiff are the "separate record[s]" created under MCL 168.615c(3), as added by 2007 PA 52, that contain the printed name, address, and qualified voter file number of each elector and the participating political party ballot selected by that elector at the 2008 presidential primary. It is clear that these "separate record[s]" are not specifically described and exempted from disclosure under § 495a(2), as amended by 1995 PA 213, which refers to "voter registration record[s]." The "voter registration record[s]" that amended § 495a(2) exempts from disclosure are completely distinct from

the "separate record[s]" kept under § 615c(3) of 2007 PA 52 and are not exempt from disclosure under § 495a(2) as amended by 1995 PA 213.

7. The information kept under § 615c(3) of 2007 PA 52 is not an elector's declaration of party preference, or no party preference. And it is only such declarations of party preference that § 495a(2), as amended by 1995 PA 213, exempts from disclosure. The only "information" kept under § 615c(3) of 2007 PA 52 is "information" regarding the political party ballots, along with the printed name, address, and qualified voter file number of each elector, that electors selected in order to vote in the 2008 presidential primary. Such selections by electors are not declarations of party preference. Amended § 495a(2) does not exempt from disclosure the "information" regarding party preference contained in the "separate record[s]" kept under § 615c(3) of 2007 PA 52 because that information is not a "declaration of party preference," or no preference. Therefore, § 13(1)(d) of FOIA, MCL 15.243(1)(d), does not apply to that information because no statutory exemption covers it. A declaration of party preference under amended § 495a(2) is not the same as a selection of a ballot under § 615c(3) of 2007 PA 52.

8. A two-pronged inquiry must be engaged in to ascertain whether the privacy exemption, MCL 15.243(l)(a), is applicable. First, it must be determined whether the information sought is "of a personal nature." Second, it must be determined whether the "public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy." The future use of the information is irrelevant to determining whether the privacy exemption exists. Only the circumstances known to the public body at the time of the request are relevant to whether a FOIA exemption precludes disclosure.

9. The thrust of the sacrosanct concept of ballot secrecy is to protect from disclosure the identity of the candidates for which an elector voted. The disclosure of the ballot, Republican, Democratic, or other, that an elector voted in the 2008 presidential primary is not the disclosure of the candidate for which that elector voted. The indication of a ballot that an elector wished to vote in the 2008 presidential primary election is not information of a personal nature under MCL 15.243(1)(a).

10. The inquiry under MCL 15.243(1)(a) whether the disclosure of the information would constitute a "clearly unwarranted" invasion of an individual's privacy requires the Court of Appeals to balance the public interest in disclosure against the interest that the Legislature intended the exemption to protect. The relevant

public interest in disclosure here is the extent to which disclosure would serve the core purpose of FOIA, which is contributing significantly to the public understanding of the operations or activities of the government. Here, there is a strong public interest in disclosure. Even if the indication of a ballot that an elector wished to vote in the 2008 presidential primary election were to be viewed as being of a personal nature, its disclosure, when weighed against the public interest in disclosure, would not be a clearly unwarranted invasion of that elector's privacy.

Affirmed.

K. F. KELLY, J., dissenting, stated that the information collected during the 2008 presidential primary is information protected by statute and its disclosure would constitute a clearly unwarranted invasion of an individual's privacy. Therefore, the information is exempt from disclosure under MCL 15.243(1)(a) and (d). The judgment of the trial court should be reversed. The FOIA's statutory exemption, MCL 15.243(1)(d), protects from disclosure records that are specifically described by statute or information that is specifically described by statute. The Legislature intended to accomplish two things through the enactment of the 1995 FOIA provision, MCL 168.495a, as amended by 1995 PA 213. First, under MCL 168.495a(1), it permits the removal of all party preference information previously captured. Second, MCL 168.495a(2) prohibits the disclosure of party preference information in the future, not limited to political preference information collected under the prior law. Therefore, the protection from disclosure provided by subsection (2) applies to all portions of voter registration records containing a party declaration, including those records created in the future. The information collected during the 1988-1995 closed primaries and during the 2008 primary, although collected by a different procedure, is the same. An elector wishing to vote was required to "proclaim" the party's primary he or she wished to vote in. In both instances, voters made a "declaration" of party preference. The phrase "declaration of party preference" encompasses an elector's selection of a party's ballot. The requested information is protected from disclosure by MCL 168.495a(2), as amended by 1995 PA 213, and is therefore exempt under the FOIA's statutory exemption, MCL 15.243(1)(d). The information sought is information of a personal nature that implicates two separate privacy interests: an individual's privacy interest in his or her political convictions and an individual's privacy interest in his or her personal identifying information. Voters' names and home addresses,

when coupled with their party preferences in the 2008 primary election, is personal information that is intimate and private, and is undoubtedly of a "personal nature." The public's interest in the disclosure of voters' names and addresses coupled with their party preference information is negligible and the disclosure of this information in this form is not necessary to shed light on the government's operations. Weighing the virtually nonexistent public interest in disclosure against electors' interests in controlling their personal information dictates the conclusion that disclosure would be an unwarranted invasion of voters' privacy. The public's interest in disclosure is outweighed by the privacy interest the Legislature intended to protect under MCL 15.243(1)(a).

1. ELECTIONS — WORDS AND PHRASES — SEPARATE RECORDS — VOTER REGISTRATION RECORDS.

The "separate record[s]" created under MCL 168.615c(3), as added by 2007 PA 52, which contain the printed name, address, and qualified voter file number of each elector and the participating political party ballot selected by that elector at the 2008 presidential primary, are public records that are not specifically described and exempted from disclosure under MCL 168.495a(2), as amended by 1995 PA 213; the "voter registration record[s]" that amended § 495a(2) exempts from disclosure are completely distinct from the "separate records[s]" kept under § 615c(3) of 2007 PA 52.

2. ELECTIONS — WORDS AND PHRASES — INFORMATION — DECLARATIONS OF PARTY PREFERENCE.

The "information" kept under MCL 168.615c(3), as added by 2007 PA 52, following the 2008 presidential primary election that includes the printed name, address, and qualified voter file number of each elector and the participating political party ballot selected by the elector is not an elector's "declaration of party preference" or no party preference under MCL 168.495a(2), as amended by 1995 PA 213.

3. ELECTIONS — FREEDOM OF INFORMATION ACT — EXEMPTIONS FROM DISCLOSURE — PRIVACY EXEMPTION.

The disclosure of information regarding which participating political party ballot an elector voted in the 2008 presidential primary is not the disclosure of personal information for purposes of the privacy exemption to disclosure of the Freedom of Information Act, MCL 15.243(1)(a); even if it were the disclosure of personal

. information, the disclosure would not constitute a clearly unwarranted invasion of an individual's privacy for purposes of the privacy exemption.

*Brookover, Carr & Schaberg, P.C.* (by *Diane S. Carr*), for plaintiff.

*Michael A. Cox*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Susan Leffler, Denise C. Barton*, and *Ann M. Sherman*, Assistant Attorneys General, for defendants.

Amicus Curiae:

*Foster, Swift, Collins & Smith,. P.C.* (by *Eric E. Doster*), for the Michigan Republican Party.

Before: BORRELLO, P.J., and WHITBECK and K. F. KELLY, JJ.

WHITBECK, J. This appeal concerns the provisions of the Freedom of Information Act (FOIA) relating to public records.[1] But the central question here is not the availability of public records. Rather it is whether the disclosure, or concealment, of these records will lead to, or detract from, the public's ability to hold its elected and appointed public officials accountable for carrying out the law. The Secretary of State (the Secretary) and her office would have us hold that these records are statutorily exempt from disclosure and that they are of such a "personal nature" that their public disclosure would constitute a "clearly unwarranted invasion" of an individual's privacy. We cannot, and do not, agree.

The records here relate to the 2008 presidential primary election, in which there was to be a "separate record" kept containing the printed name, address, and

[1] MCL 15.231 *et seq.*

qualified voter file number of each elector and the "participating political party" ballot selected by that elector. The main "participating" political parties were the Democratic Party and the Republican Party. The 2008 presidential primary in Michigan was conducted amid a swirl of controversy, charges, and counter-charges. Ultimately, a federal court found the act that authorized that primary to be unconstitutional on equal protection grounds. But these complexities should not cloud the basic issue. That issue here is whether we should shield from public disclosure the "separate records" that contain information as to which *ballot*— not which *candidate*—each voter selected in the 2008 presidential primary. We do not view FOIA and the cases interpreting it as providing such a shield. We therefore affirm the decision of the trial court.

### I. BASIC FACTS AND PROCEDURAL HISTORY

#### A. THE VARIOUS PRESIDENTIAL PRIMARY SYSTEMS

The law relating to recent presidential primary elections in Michigan falls into three categories:

• First, by statute from 1988 to 1995, Michigan had a "closed" presidential primary system, with certain requirements regarding eligibility to vote in party presidential primaries.

• Second, by statute from 1995 to 2007, Michigan had an "open" presidential primary system that allowed voting in party primaries without the eligibility requirements that the former election law imposed.

• Third, by statute in 2008, Michigan had what might reasonably be called a "semi-open" presidential primary, with certain requirements—less onerous than those that the law imposed in 1988 to 1995—regarding eligibility to vote in a party's presidential primary.

More specifically, the law in these three categories contained the following provisions:

| 1988-1995 Closed Presidential Primary System: Declaration of Party Preference By Elector | A "registration affidavit" kept at the township, city, or village level was required to contain a space in a presidential primary election for the "elector to declare a party preference or that the elector has no party preference."[2] Even if currently registered to vote, an elector would not be eligible to vote in a presidential primary election unless the elector "declare[d] in writing . . . a party preference at least 30 days before the presidential primary election."[3] Thus, only those electors who declared a party preference 30 days before the presidential primary election could vote for the candidates in any of the parties' respective presidential primaries. |
| --- | --- |
| 1995-2007 Open Presidential Primary System: No Declaration of Party Preference By Elector | The "registration affidavit" was no longer required to contain the space for an elector to declare a party preference 30 days (or any other period) before the presidential primary election.[4] Thus, any elector, who had otherwise completed a valid registration affidavit could vote for the candidates in any of the parties' respective presidential primaries. |
| 2008 Semi-Open Presidential Primary: Indication of Which Party Ballot Elector Wished to Vote | In order to vote in a presidential primary, an elector was required to "indicate in writing, on a form prescribed by the secretary of state, which participating political party ballot he or she wishes to vote when appearing to vote at a presidential primary."[5] Thus, only the electors who indicated, at the time they appeared to vote, which participating political party ballot "he or she wishes to vote" could vote for the candidates in any of the parties' respective presidential primaries. |

There is a significant difference between the three categories. Under the 1988-1995 closed primary system, an elector had to *"declare"* a "party preference" 30 days in advance in order to vote in a presidential primary. Under the 1995-2007 open primary system, by contrast, there were no requirements regarding party preference or ballot selection, by declaration or otherwise, and any qualified elector could vote in any of the parties' respective presidential primaries. In 2008, an elector was not required to *"declare"* a "party preference" but rather that elector was required to *"indicate"* which "participating political party ballot he or she wish[ed] to vote . . . ." And the elector

---

[2] MCL 168.495(1)(k), as amended by 1988 PA 275.

[3] MCL 168.495(2)(c), as amended by 1998 PA 275; MCL 168.523(3), as amended by 1988 PA 275.

[4] MCL 168.495, as amended by 1995 PA 87.

[5] MCL 168.615c(1), as added by 2007 PA 52.

could indicate his or her choice of ballot when he or she appeared at the polling place to vote in the presidential primary, rather than 30 days in advance.

### B. RECORD-KEEPING REQUIREMENTS

The three categories also had significantly different record-keeping requirements. In summary, the law in these three categories contained the following provisions:

| 1988-1995 Closed Presidential Primary System: Declaration of Party Preference By Elector | The clerk of each township, city, and village was required to provide blank forms, designated as "registration cards," to be used in the registration of electors. These "registration cards" were to include an affidavit designated as a "registration affidavit" to be executed by the registrant.[6] This "registration affidavit" was to contain:<br>■ the name of the elector;<br>■ the residence address, street and number or rural route and box number, if any, of the elector;<br>■ the birthplace and birth date of the elector;<br>■ the driver's license or state identification card number of the elector, if available;<br>■ a statement that the elector was a citizen of the United States;<br>■ a statement that the elector at the time of completing the affidavit, or on the date of the next election, was not less than 18 years of age;<br>■ a statement that the elector has or will have lived in the state not less than 30 days before the election;<br>■ a statement that the elector has or will have established his or her residence in the township, city, or village in which the elector is applying for registration not less than 30 days before the next election;<br>■ a statement that the elector is or will be a qualified elector of the township, city, or village on the date of the next election;<br>■ a space in which the elector shall state the place of the elector's last registration; and, as mentioned above,<br>■ a space for the elector to declare a party preference or that the elector has no party preference.[7]<br><br>In addition, if authorized by the election commission of the city, village, or township, the clerk of a city, village, or township was to create a "registration list," alphabetically arranged and containing the name, address, date of birth of the elector and, "for the purpose of voting in a presidential primary election, the party preference or declaration of no party preference of the elector, if any."[8] |

---

[6] MCL 168.493, as amended by 1989 PA 142.

[7] MCL 168.495(1)(a) through (k), as amended by 1988 PA 275.

[8] MCL 168.501a, as amended by 1988 PA 275.

| 1995-2007 Open Presidential Primary System: No Declaration of Party Preference By Elector | As noted above, the "registration affidavit" no longer contained the requirement that an elector declare a party preference 30 days (or any other period) before the presidential primary election.[9] In 2005, the Legislature repealed MCL 168.501a, relating to registration lists.[10] The other record-keeping requirements remained the same. |
|---|---|
| 2008 Semi-Open Presidential Primary: Indication of Which Party Ballot Elector Wished to Vote | The Secretary of State was required to "develop a procedure for city and township clerks to use when keeping a separate record at a presidential primary that contains the printed name, address, and qualified voter file number of each elector and the participating political party ballot selected by that elector at the presidential primary."[11] |

Thus, from 1988 to 1995, under the closed presidential primary system, the registration affidavits contained extensive information about electors, including an elector's declaration of party preference (or no preference) for the purpose of voting in a presidential primary. But from 1995 to 2007, under the open presidential primary system, the elector's declaration of party preference was no longer kept in the registration affidavits. In 2008, however, there was to be a "separate record" in the semi-open presidential primary that contained the printed name, address, and qualified voter file number of each elector and the selection of the participating political party ballot by that elector.

---

[9] MCL 168.495, as amended by 1995 PA 87.

[10] 2005 PA 71, enacting § 1.

[11] MCL 168.615c(3), as added by 2007 PA 52.

C. DISCLOSURE RESTRICTIONS

The law in these three categories also contained signifi
cantly different restrictions upon disclosure. In summary,
the law in these three categories contained the following
provisions:

| 1988-1995 Closed Presidential Primary System: Declaration of Party Preference By Elector | There were no explicit restrictions on the disclosure of the public records required to be kept. |
|---|---|
| 1995-2007 Open Presidential Primary System: No Declaration of Party Preference By Elector | In 1995, the Legislature adopted two explicit restrictions with respect to the disclosure of public records required to be kept (the 1995 FOIA provision). First, in amended § 495a(1), the Legislature provided:<br>    If an elector declared a party preference or no party preference as previously provided under this act for the purpose of voting in a statewide presidential primary election, a clerk or authorized assistant to the clerk may remove that declaration from the precinct registration file and the master registration file of that elector and the precinct registration list, if applicable.[12]<br>Second, in amended § 495a(2), the Legislature provided:<br>    Beginning on the effective date of the amendatory act that added this sentence [November 29, 1995], a person making a request under the freedom of information act . . . is not entitled to receive a copy of a portion of a voter registration record that contains a declaration of party preference or no party preference of an elector. Beginning on the [same date], a clerk or any other person shall not release a copy of a portion of a voter registration record that contains a declaration of party preference or no party preference of an elector.[13] |

---

[12] MCL 168.495a(1), as amended by 1995 PA 213.
[13] MCL 168.495a(2), as amended by 1995 PA 213.

| 2008 Semi-Open Presidential Primary: Indication of Which Party Ballot Elector Wished to Vote | In 2007, the Legislature repealed the 1995 FOIA provision relating to the disclosure of public records required to be kept.[14] The Legislature then provided: "Except as otherwise provided in this section, the information acquired or in the possession of a public body indicating which participating political party ballot an elector selected at a presidential primary is confidential, exempt from disclosure under the freedom of information act . . . and shall not be disclosed to any person for any reason."[15] The exception to this restriction was the requirement that the Secretary "provide to the chairperson of each participating political party a file of the records for each participating political party described under subsection (3)."[16] This "subsection (3)" file contained the "printed name, address, and qualified voter file number of each elector and the participating political party ballot selected by that elector at the presidential primary."[17] |
|---|---|

As noted, the changes to the election law that the Legislature adopted in 2007 for the 2008 presidential primary repealed the 1995 FOIA provision and substituted an exemption from disclosure for the information acquired or in the possession of a public body that indicated which participating political party ballot an elector selected at a presidential primary. However, after the 2008 primary, a federal court declared § 615c of 2007 PA 52 unconstitutional on equal protection grounds.[18] 2007 PA 52 contained a nonseverability clause.[19] Thus, 2007 PA 52 became null and void in its entirety.[20] And, accordingly, the repealer of the 1995 FOIA provision was also struck down. As the parties agree, following this federal court decision, Michigan election law, including the 1995 FOIA provision, reverted back to the position that it was in before the Legislature enacted 2007 PA 52. Thus, § 495a(1), as amended by 1995 PA 213, and § 495a(2), as amended by 1995 PA 213, came back into effect.

---

[14] 2007 PA 52, enacting § 2.

[15] MCL 168.615c(4), as added by 2007 PA 52.

[16] MCL 168.615c(6), as added by 2007 PA 52.

[17] MCL 168.615c(3), as added by 2007 PA 52.

[18] *Green Party of Mich v Mich Secretary of State*, 541 F Supp 2d 912, 924 (ED Mich, 2008).

[19] 2007 PA 52, enacting § 1.

[20] See *John Spry Lumber Co v Sault Savings Bank Loan & Trust Co*, 77 Mich 199, 200-202; 43 NW 778 (1889).

### D. PRACTICAL POLITICAL CONSULTING'S FOIA REQUEST AND THE SECRETARY'S DENIAL

On March 26, 2008, plaintiff, Practical Political Consulting, Inc., through Jon Hansen, faxed a handwritten request to officials of the Secretary's department requesting "a copy of all vote history of the 1/15/08 presidential primary including which ballots each voter selected (D or R)." Practical Political Consulting, again through Jon Hansen, then sent a confirming e-mail requesting "all voter history pertaining to that (the January 15, 2008 presidential primary) election including which ballot, D or R, each voter selected." Although the language of these two requests is somewhat different, the substance is essentially the same. Collectively, therefore, they constitute the March 26, 2008 FOIA request.

On April 17, 2008, the Secretary, through FOIA Coordinator Melissa Malerman, denied Practical Political Consulting's request. The Secretary set forth three grounds for this denial. First, she asserted that the "party preference information collected during the primary" was not a public record as defined by FOIA. Second, the Secretary asserted that the "party preference data" was exempt from disclosure under § 13(1)(a) of FOIA, the privacy exemption.[21] Third, the Secretary asserted that the "voter preference information" was exempt from disclosure under § 13(1)(d) of FOIA, the statutory exemption.[22]

Importantly, the Secretary then went on to offer the release of the names and addresses of those who voted in the January 15, 2008, primary. She stated:

> Although the nature of the Department's duties have changed as described above, and under the present circumstances the information you seek does not meet the defini-

---

[21] MCL 15.243(1)(a).

[22] MCL 15.243(1)(d).

tion of a public record under the FOIA, the Department does have in its possession the names and addresses of those who voted on January 15, 2008. Despite the denial of your request, in the spirit of cooperation, the Department wishes to extend to you the opportunity to obtain this information. By extending this opportunity, the Department does not waive any legal positions that could be asserted in the event of litigation.

### E. THE FOIA LITIGATION

Practical Political Consulting then brought suit against the Secretary, as allowed by FOIA.[23] The Secretary moved for summary disposition, but the trial court denied her motion and entered a judgment against her as well as granted a request for injunctive relief enjoining her from violating FOIA by "claiming that the records sought in this case are not public records, or claiming exemptions to the production of the records sought in this case under §13(1)(a) and/or § 13(1)(d) of the FOIA." However, the trial court granted the Secretary's request for a stay pending appeal. The Secretary then appealed, asserting that the "records requested by" Practical Political Consulting were exempt under § 13(1)(a) of FOIA, the privacy exemption, and § 13(1)(d) of FOIA, the statutory exemption. Significantly, the Secretary dropped her assertion that the records Practical Political Consulting requested were not public records.

### II. THE STATUTORY EXEMPTIONS TO DISCLOSURE UNDER FOIA

#### A. STATUTORY PROVISIONS

Section 13(1)(d)[24] of FOIA sets out the "statutory exemption" to disclosure under FOIA as follows:

---

[23] MCL 15.240(1)(b).

[24] MCL 15.243(1)(d).

(1) A public body may exempt from disclosure as a public record under this act any of the following:

*   *   *

(d) Records or information specifically described and exempted from disclosure by statute.

The specific statutory exemption at issue here, the 1995 FOIA provision, is contained in amended § 495a of the Michigan Election Law relating to restrictions on disclosure.[25] As noted above, the 1995 FOIA provision contained two new subsections. The first, amended § 495a(1),[26] is backward looking in that it pertains to declarations of party preferences "as previously provided under this act . . . ." This subsection is therefore not at issue here.

The second subsection, amended § 495a(2), of the 1995 FOIA provision is, however, forward looking and directly relevant. This subsection states:

Beginning on the effective date of the amendatory act that added this sentence [November 29, 1995], a person making a request under the freedom of information act . . . is not entitled to receive a copy of a portion of a voter registration record that contains a declaration of party preference or no party preference of an elector. Beginning on the [same date], a clerk or any other person shall not release a copy of a portion of a voter registration record that contains a declaration of party preference or no party preference of an elector.[27]

As noted above, 2007 PA 52 repealed the 1995 FOIA provision. But a federal court later found § 615c of 2007 PA 52 to be unconstitutional. Because 2007 PA 52

---

[25] MCL 168.495a, as amended by 1995 PA 213.

[26] MCL 168.495a(1), as amended by 1995 PA 213.

[27] MCL 168.495a(2), as amended by 1995 PA 213 (citation omitted).

contained a nonseverability clause, the entire act, including the repealer, was null and void. Therefore, the 1995 FOIA provision, including amended § 495a(2), is now back in effect. Under that subsection, the question before us is twofold. First, was the March 26, 2008, FOIA request a request for a copy of an identifiable public record specifically described and exempted from disclosure under amended § 495a(2)? Second, even if the March 26, 2008, FOIA request was not a request for a copy of an identifiable public *record* specifically described and exempted from disclosure under amended § 495a(2), was the *information* in that public record specifically described and exempted from disclosure under amended § 495a(2)?

### B. THE "SEPARATE RECORD" AND AMENDED § 495a(2)

Section 1(1) of FOIA[28] titles it the " 'freedom of information act,' " and it has been referred to in that fashion since its enactment. However, in at least some respects, it could more accurately be described as the "access to public records act." Indeed, § 3(1) of FOIA, its basic enabling section, states:

> Except as expressly provided in section 13, upon providing a public body's FOIA coordinator with a written request that describes a *public record* sufficiently to enable the public body to find the *public record*, a person has the right to inspect, copy, or receive copies of the requested *public record* of the public body.[29]

Here, the public records in question are the "separate record[s]" created under § 615c(3) of 2007 PA 52[30] for the 2008 presidential primary that contain the printed

---

[28] MCL 15.231(1).

[29] MCL 15.233(1) (emphasis added).

[30] MCL 168.615c(3), as added by 2007 PA 52.

name, address, and qualified voter file number of each
elector and the participating political party ballot se-
lected by that elector at the 2008 presidential primary.
The Secretary apparently now concedes that these
"separate record[s]" are public records and it is fairly
clear, although Practical Political Consulting's request
was informally worded and not overly precise, that
these "separate record[s]" were also the public records
that Practical Political Consulting sought in its March
26, 2008, FOIA request.

But it is also equally clear that these "separate
record[s]" are *not* specifically described and exempted
from disclosure under amended § 495a(2). That subsec-
tion refers to "voter registration record[s]." Presum-
ably, these "voter registration record[s]" include "reg-
istration affidavits," along with considerable other
information, declarations of party preference by elec-
tors[31] and, if applicable, "registration list[s]"[32] that also
include, along with other information, declarations of
party preference by electors.

The "voter registration record[s]" that amended
§ 495a(2) exempts from disclosure are completely dis-
tinct from the "separate record[s]" kept under § 615c(3)
of 2007 PA 52. And there is simply no way of reasonably
construing the statutory exemption from disclosure for
"voter registration record[s]" under amended § 495a(2)
as specifically describing and exempting the "separate
record[s]" kept under § 615c(3) of 2007 PA 52. These
"separate record[s]" are not "voter registration
record[s]" at all. Rather, they are records of the partici-
pating political party ballots—along with the printed
name, address, and qualified voter file number of each

---

[31] See MCL 168.495(1)(a) through (k), as amended by 1988 PA 275.

[32] See MCL 168.501a, as amended by 1987 PA 37.

elector—that electors selected at their polling places in order to vote in the 2008 presidential primary.

As such, these "separate record[s]" have nothing whatever to do with voter registration. Again, they are simply the names, addresses, and the qualified voter file number of electors voting in the 2008 presidential primary along with the participating political party ballot selected by such electors in that presidential primary. Because they are not "voter registration record[s]," they are not exempt from disclosure under amended § 495a(2).

### C. THE "INFORMATION" KEPT UNDER § 615c(3) OF 2007 PA 52

There is, however, a more subtle point to be explored. Section 13(1)(d) of FOIA, the provision that contains the statutory exemption,[33] refers not only to *records* but also to *information*, and there is an "or" between these two words. Arguably, the *information* is a term to be interpreted separately and distinctly from the term *records*. Thus, it could be argued—and the dissent does argue—that amended § 495a(2)[34] of the 1995 FOIA provision prohibits the disclosure of all party preference *information* in the future.

Section 13(1)(d) of FOIA clearly refers not only to "[r]ecords" but also to "information." But the "information" kept under § 615c(3) of 2007 PA 52 is not an elector's "*declaration* of party preference" (or no preference). And it is *only* such *declarations* of party preference that amended § 495a(2)[35] exempts from disclosure. On its face, the only "information" kept under § 615c(3) of 2007 PA 52 is "information" regarding the

---

[33] MCL 15.243(1)(d).

[34] MCL 168.495a(2), as amended by 1995 PA 213.

[35] *Id.*

participating political party ballots—along with the printed name, address, and qualified voter file number of each elector—that electors selected in order to vote in the 2008 presidential primary. Such *selections* by electors are manifestly not *declarations* of party preference.

Perhaps the best way of illustrating this rather technical linguistic distinction is by example. Under the 1988-1995 closed presidential primary system, in order to vote in a presidential primary an elector had to *declare* a party preference (or that the elector had no party preference).[36] Thus, in effect, the elector was required to declare that he or she was a Democrat, a Republican, or a member of another party. Alternatively, the elector could declare no party preference. Only those electors who declared a party preference 30 days before the presidential primary election could vote for the candidates in any of the parties' respective presidential primaries. Thus, without a previous declaration, a Democrat, for example, could not vote in the Democratic Party's presidential primary. The declaration of party preference, therefore, had real meaning. It effectively excluded those persons who were unwilling to make such a declaration at least 30 days in advance from voting in their respective political parties' presidential primaries.

By contrast, the "information" kept under § 615c(3) of 2007 PA 52 is "information" regarding the participating political party ballots—along with the printed name, address, and qualified voter file number of each elector—that electors selected in order to vote in the 2008 presidential primary. Such "information" is not the *"declaration* of party preference" (or no party preference) that amended § 495a(2)[37] exempts from disclosure.

---

[36] MCL 168.495(1)(k), as amended by 1988 PA 275.

[37] MCL 168.495a(2), as amended by 1995 PA 213.

To illustrate, again by way of example, in 2008, a Democrat, knowing that the Democratic Party candidates were choosing not to campaign in the presidential primary in Michigan, could have selected the ballot for and voted in the Republican Party's presidential primary. That Democrat was not making a "declaration" of party preference. Rather, he or she was simply choosing to vote in the Republican Party's 2008 presidential primary. This choice—a ticket to ride obtained at the polling place, good for that day only and not applicable to any other trains (in the form of future presidential primaries) that might leave the station—is not voter *registration* information and it certainly is not a *declaration* of party preference. Thus, amended § 495a(2)[38] does not exempt from disclosure the "information" regarding party preference contained in the "separate record[s]" kept under § 615c(3) of 2007 PA 52 because that information is not a "declaration of party preference" (or no preference). It follows, therefore, that § 13(1)(d) of FOIA does not apply to that "information," because no statutory exemption covers it.

The dissent concedes that the voter registration records protected under amended § 495a(2) are not the "exact same records" as the separate records kept under § 615c(3) of 2007 PA 52.[39] But the dissent contends that the information contained in these records is nevertheless the same.[40] This can be so only if a declaration by an elector of a party preference—30 days in advance of a presidential primary—is the same as a selection by an elector—on the day of the presidential primary—of a participating political party ballot on which that elector wishes to cast his or her vote. If we

---

[38] *Id.*

[39] *Post* at 479.

[40] *Post* at 479.

are to assume—and we do—that words have meaning, and if we are required to operate under the presumption—and we are certainly so required—that the Legislature chooses the words it uses both purposefully and precisely, then a declaration of a party preference under amended § 495a(2) is *not* the same as a selection of a ballot under § 615c(3) of 2007 PA 52.

The fact that eligibility to vote was "conditioned"[41] upon both a declaration of party preference, on the one hand, and the selection of a ballot, on the other, does not make the information collected under amended § 495a(2) and § 615c(3) of 2007 PA 52 the same, or even similar, information. The distinction in the terms that the Legislature used is one *with* a difference. Accordingly, the phrase "declaration of party preference" does *not* "plainly and unambiguously encompass[] an elector's selection of a party's ballot."[42] These are two separate and distinct acts and, the dissent to the contrary, the information relating to them is similarly separate and distinct.

### III. THE PRIVACY EXEMPTION TO DISCLOSURE UNDER FOIA

#### A. STATUTORY PROVISIONS

Section 13(1)(a) of FOIA sets out the "privacy exemption" to disclosure under FOIA as follows:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:
>
> (a) Information of a personal nature if public disclosure of the information would constitute a *clearly unwarranted* invasion of an individual's privacy.[43]

---

[41] *Post* at 479.

[42] *Post* at 480.

[43] MCL 15.243(1)(a) (emphasis added).

### B. OVERVIEW

It is well at the outset to be clear about exactly what information is at issue here. First, the information at issue is *not* the names and addresses of the persons who voted in the 2008 presidential primary. As the Secretary concedes, she has released the names and addresses of registered voters in the past. And there is ample precedent, in a number of different contexts, for the release of names and addresses.[44]

Second, the information at issue is *not* simply the listing of the number of votes cast in any of the political parties' 2008 presidential primaries, with names and addresses redacted. Self-evidently, this information is available to any interested citizen who cares to inspect the publicly published results of the 2008 presidential primaries. Indeed, that same citizen could quickly learn how many votes were cast for each *candidate* of the respective parties in each of the 2008 presidential primaries by inspecting the same publicly available results.

Rather, it is the names and addresses of the persons who voted in the 2008 presidential primary *coupled with* the party preference that those persons indicated in order to obtain a ballot relating to one of the participating political parties. It is this information that the Secretary asserts is exempt from disclosure under the privacy exemption of FOIA.

---

[44] See, for example, *Int'l Union, United Plant Guard Workers of America v Dep't of State Police*, 422 Mich 432; 373 NW2d 713 (1985) (list containing names and home addresses of individuals employed by private security guard agencies was not so personal and private that it should not be disclosed); *Tobin v Civil Serv Comm*, 416 Mich 661; 331 NW2d 184 (1982) (FOIA does not prohibit disclosure of names and addresses of classified civil service employees to public employee labor organizations); *Mich State Employees Ass'n v Dep't of Mgt & Budget*, 135 Mich App 248; 353 NW2d 496 (1984) (employees' home addresses do not fall under privacy exemption of FOIA).

We are to engage in a two-pronged inquiry to ascertain whether the privacy exemption is applicable. First, we must determine whether the information is " 'of a personal nature.' " Second, we must determine whether the "public disclosure of that information 'would constitute a clearly unwarranted invasion of an individual's privacy.' "[45]

In interpreting statutes, our goal is to ascertain the Legislature's intent.[46] And in so doing, our first step is to look at the language that the Legislature used.[47] This is so because "[t]he words of a statute provide 'the most reliable evidence of [the Legislature's] intent . . . .' "[48] But, here, the Secretary implies that we should go beyond the words of the statute and consider "a sampling of public outrage expressed during the 1992 closed presidential election." She then quotes at length from newspaper articles, editorials, and letters to the editor concerning the 1992 primary and suggests, without any supporting authority, that we can take judicial notice of these articles, editorials, and letters to the editors. We decline to do so. Our inquiry here is, and must be, limited to the words of the statute.

The dissent similarly relies on the deus ex machina of public outcry to underpin its analysis of the enactment of the 1995 FOIA provision.[49] The dissent states that, "A Senate Fiscal Agency bill analysis cited 'public outrage' as a reason for changing the primary election system

---

[45] *Mich Federation of Teachers v Univ of Mich*, 481 Mich 657, 675; 753 NW2d 28 (2008).

[46] *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004).

[47] *Id.* at 549.

[48] *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999), quoting *United States v Turkette*, 452 US 576, 593; 101 S Ct 2524; 69 L Ed 2d 246 (1981).

[49] See *post* at 468 n 1.

from a closed system to an open one."[50] The Legislature did no such thing. One legislative analyst reached that conclusion. That analyst's views reflected the analyst's own opinion, nothing more. Those views may not have been the views of a single legislator, much less of the entire Legislature at the moment it voted upon the legislation in question.[51]

Upon this highly suspect basis, the dissent piles a goodly number of imaginary horribles that it anticipates may occur if the Secretary releases the names and addresses of the persons who voted in the 2008 presidential primary coupled with the party preference that those persons ostensibly indicated. The dissent asserts that disclosure "could subject electors to unwanted or unwarranted attention from peers, colleagues, and neighbors and could result in serious discomfort amongst family members."[52] And, the dissent states, "[I]n some instances, disclosure could subject electors to harassment or ridicule from those same groups and could impact a person's professional career, especially if that person is employed in a political profession, such as a public officer or an employee of a nonprofit political organization."[53]

We can only emphasize that this is pure speculation, with not a speck of evidence—other than the alleged "public outcry" over disclosure of party declaration information taken whole cloth from a single legislative analysis by an unknown author—to support it.

Moreover, the future use of the information is irrelevant to determining whether the privacy exemption

[50] *Post* at 468 n 1.

[51] *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 587 n 7; 624 NW2d 180 (2001).

[52] *Post* at 484.

[53] *Post* at 484.

applies.[54] And, as the Michigan Supreme Court has recently proclaimed, only the circumstances known to the public body at the time of the request are relevant to whether an exemption precludes disclosure.[55] Because Practical Political Consulting did not reveal the purposes for its March 26, 2008, FOIA request, the Secretary could not have known those purposes at the time of her denial. And no matter what use Practical Political Consulting may make of the requested information—even if Practical Political Consulting intends to send unwanted mass mailings or a deluge of junk mail or make telephone solicitations or personal visits[56]—such future use is irrelevant.

We also note the dissent's reliance[57] on the "explicit" provision of 2007 PA 52 that exempts "information acquired or in the possession of a public body indicating which participating political party ballot an elector selected at a presidential primary" from disclosure under FOIA.[58] We agree that such an exemption from disclosure under FOIA existed in 2007 PA 52. But we note that 2007 PA 52 also contained an *explicit* non-severability provision.[59] Therefore, while it is clear that the Legislature intended to exempt from disclosure information regarding which participating political party ballot an elector selected in the 2008 presidential primary, it is also clear that the Legislature intended that if any provision of 2007 PA 52 were to be found

---

[54] *State Employees Ass'n v Dep't of Mgt & Budget*, 428 Mich 104, 121; 404 NW2d 606 (1987).

[55] *State News v Mich State Univ*, 481 Mich 692, 703; 753 NW2d 20 (2008).

[56] See *post* at 497-498.

[57] See *post* at 488.

[58] MCL 168.615c(4), as added by 2007 PA 52.

[59] 2007 PA 52, enacting § 1.

invalid, the remainder of the statute would likewise be "invalid, inoperable, and without effect."[60] And, of course, that is exactly what happened.

In essence, then, in 2007 PA 52, the Legislature created a structure that was whole and complete unto itself. But the Legislature also provided that if any component of that structure were to be removed, the entire edifice would crumble. Therefore, the exemption from disclosure under the FOIA provision of 2007 PA 52, like all other provisions of the statute, would fall of its own weight and would henceforth be "invalid, inoperable, and without effect." Under such circumstances, there can be no other conclusion but that the Legislature clearly intended that the situation would revert to the *status quo ante* and that amended § 495a(2)[61] would be once again of full force and effect. Thus, of necessity, we are left with the language of amended § 495a(2) as it existed *before* the Legislature enacted 2007 PA 52, with the language of the FOIA privacy exemption itself, and with the cases interpreting or relevant to that language. And that is where we should start our analysis and where we should end it.

### C. INFORMATION OF A PERSONAL NATURE

Although the Secretary and the dissent discount its importance, the decision in *Ferency v Secretary of State*[62] is of direct relevance to whether the names and addresses of the persons who voted in the 2008 presidential primary coupled with the party preference that those persons indicated is information of a personal nature. In deciding a similar—although admittedly not exactly the same—question, this Court in *Ferency* stated:

---

[60] *Id.*

[61] MCL 168.495a(2), as amended by 1995 PA 213.

[62] *Ferency v Secretary of State*, 190 Mich App 398; 476 NW 2d 417 (1991).

> This [the disclosure of party affiliation] does not violate the
> secrecy of the ballot, *because there is no legitimate interest
> by the voter to shield his affiliation from a party where that
> voter decides to participate in the party activities and where
> the ballot remains secret once the voter gets in the primary
> election booth.*[63]

It is helpful to break this quotation down in order to
understand it fully. The disclosure of party affiliation in
question was the declaration of party preference that,
under the 1988-1995 closed primary system, an elector
had to make 30 days in advance in order to vote in a
party's presidential primary. As noted, in effect, the
elector was then declaring that he or she was a Demo-
crat, a Republican, or a member of another party.

By contrast, in 2008, an elector was not making a
declaration of a party preference. Rather, that elector
was simply indicating the ballot—Democratic, Republi-
can, or a third party—that he or she wished to vote.
Certainly, the indication of a ballot that an elector
wished to vote in the 2008 presidential primary is
information of a less personal nature than is a declara-
tion of a party preference that an elector was required
to make, if he or she wished to vote in a presidential
primary, between 1988 and 1995.

It is possible to distinguish *Ferency* on the ground that
it relates to information that was to be given to a political
*party* rather than, as is the case here, information that is
available to *the general public.* This is certainly relevant
to the party's interest in conducting its presidential pri-
maries. But we do not understand how a wider distribu-
tion to the general public, as would be the case here, as
contrasted to a more limited distribution to the political
parties, as was the case between 1988 and 1995, makes

---

[63] *Id.* at 418 (emphasis added).

the information in question here any more personal in nature than it would otherwise be.

Last, and perhaps most fundamentally, the whole thrust of the sacrosanct concept of ballot secrecy[64] is to protect from disclosure the identity of the *candidates* for which an elector voted. This is, after all, why we vote in secret. But, the dissent to the contrary,[65] the disclosure of the *ballot*—Republican, Democratic, or other— that an elector voted in the 2008 presidential primary is obviously *not* the disclosure of the *candidate* for which that elector voted. As this Court said in *Ferency:*

> The requirement that a voter publicly register as being affiliated with one party or the other in order to be eligible to vote in the presidential primary does not itself directly affect the secrecy of the voter's ballot. That is, the voter is not required to disclose which individual candidate he is voting for, but is merely required to disclose from which group of candidates he is making his selection (i.e., which party primary he is voting in).[66]

We therefore conclude that the indication of a ballot that an elector wished to vote in the 2008 presidential primary is not information of a personal nature.

### D. CLEARLY UNWARRANTED INVASION OF AN INDIVIDUAL'S PRIVACY

Even if the disclosure of information regarding the ballots that electors voted in the 2008 presidential

---

[64] See Const 1963, art 2, § 4.

[65] See *post* at 483: "Disclosure would reveal that a person voted for particular types of candidates *and an inference could be drawn as to whom an individual voted for on the basis of the makeup of the ballot.*" (Emphasis added). We fail to see how, for example, the disclosure that an individual selected the Republican ballot as the one on which he or she preferred to vote in the 2008 presidential primary would permit an inference that the individual voted for John McCain rather than Mitt Romney.

[66] *Ferency*, 190 Mich App at 414.

primary is the disclosure of personal information, this is not enough to exempt this information from disclosure. Such disclosure must also constitute a "clearly unwarranted" invasion of an individual's privacy.[67] This inquiry requires us to

> balance the public interest in disclosure against the interest [the Legislature] intended the exemption to protect[.] . . . [T]he only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government.[68]

In Michigan, from 1988 to 1995, there was no restriction upon the release not only of electors' names and addresses but also upon their declarations of party preference. This disclosure of the names and addresses was a warranted invasion of personal privacy because that disclosure was necessary to inform the general public whether voters were properly registered and whether they were voting in the proper precinct. Disclosure of such information, if requested, was necessary to hold government accountable for the integrity and purity of this state's elections.

This is the core purpose of FOIA. That purpose is to provide the people of this state with full and complete information regarding the government's affairs and the official actions of governmental officials and employees.[69] As this Court said in *State News v Mich State Univ*:[70]

---

[67] MCL 15.243(1)(a); *Mich Federation of Teachers*, 481 Mich at 675.

[68] *Mich Federation of Teachers*, 481 Mich at 673 (quotation marks and citations omitted).

[69] MCL 15.231(2); *Taylor v Lansing Bd of Water & Light*, 272 Mich App 200, 204; 725 NW2d 84 (2006).

[70] *State News v Mich State Univ*, 274 Mich App 558, 567-568; 735 NW2d 649 (2007), rev'd in part on other grounds 481 Mich 692 (2008).

Central to both the broad policy and the implementing mechanisms of FOIA is the concept of accountability. FOIA, through its disclosure provisions, allows the citizens of Michigan to hold public officials accountable for the decisions that those officials make on their behalf. By shifting the balance away from restricted access to open access in all but a limited number of instances, the Legislature necessarily determined that, except in those limited instances, disclosure facilitates the process of governing because it incorporates the concept of accountability.

The Secretary clearly recognizes the concept of accountability. But she turns away from that concept when she argues that, assuming the public has an interest in knowing how public officials performed their tasks associated with the 2008 presidential primary, "the linking of party preference information with voter name, address, and qualified voter number, does nothing to inform the public about how local clerks of the Secretary . . . are performing their statutory and public duties with regard to elections." To the contrary, we conclude that disclosure of such information *would* inform the public to what extent the Secretary and the various local clerks carried out the requirements of 2007 PA 52. Indeed, there is no other way by which these individuals can be held accountable for their implementation of a then-valid statute. And, we emphasize, there is no doubt that the public has a strong and ongoing interest in knowing how public officials perform the tasks that the law assigns to them.

Thus, there is a strong—not a "virtually nonexistent"[71]—public interest in disclosure. And, conversely, in order to avoid disclosure, a party must show a "clearly unwarranted" invasion of an individual's

---

[71] *Post* at 497.

privacy.[72] In a manner of speaking, the Legislature when enacting, and courts when interpreting, the privacy exemption of FOIA have weighted the scales heavily in favor of disclosure: the balance to be struck is between the public's ongoing interest in governmental accountability, on the one hand, and *clearly unwarranted* invasions of privacy on the other. Under this exemption, the scales are not balanced equally at the outset, and for good reason. In all but a limited number of circumstances, the public's interest in governmental accountability prevails over an individual's, or a group of individuals', expectation of privacy. As Louis D. Brandeis stated so many years ago, "Publicity is justly commended as a remedy for social and industrial diseases. Sunlight is said to be the best of disinfectants; electric light the most efficient policeman."[73]

And, we emphasize, if there ever was an area in which that disinfectant is the most needed, it is in the conducting of elections. Elections constitute the bedrock of democracy and the public's interest in the purity of such elections is of paramount importance. If we cannot hold our election officials accountable for the way in which they conduct our elections, then we risk the franchise itself. And we cannot hold our election officials accountable if we do not have the information upon which to evaluate their actions. We therefore conclude that, even if the indication of a ballot that an elector wished to vote in the 2008 presidential primary were to be viewed as being of a personal nature, its disclosure would not be a clearly unwarranted invasion of that elector's privacy.

---

[72] MCL 15.243(1)(a); *Mich Federation of Teachers*, 481 Mich at 675.

[73] Brandeis, *Other People's Money—and How the Bankers Use It* 92 (Fredericks A. Stokes Co, 1914).

### IV. CONCLUSION

FOIA is a pro disclosure statute that we are to interpret broadly to allow public access. Conversely, we are to interpret its exemptions narrowly so that we do not undermine its disclosure provisions.[74] Simply put, the core purpose of FOIA is disclosure of public records in order to ensure the accountability of public officials.[75] Here, there is no question that the "separate record[s]" created under § 615c(3) of 2007 PA 52[76] for the 2008 presidential primary that contain the printed name, address, and qualified voter file number of each elector and the participating political party ballot selected by that elector at the 2008 presidential primary are public records. And there is no question that these "separate record[s]" were also the public records that Practical Political Consulting sought in its March 26, 2008, FOIA request.

As we have outlined above, these "separate record[s]" are *not* specifically described and exempted from disclosure under amended § 495a(2). The "voter registration record[s]" that amended § 495a(2) exempts from disclosure are completely distinct from the "separate record[s]" kept under § 615c(3) of 2007 PA 52. Further, "information" kept under § 615c(3) of 2007 PA 52 is not an elector's "declaration of party preference" (or no preference). And it is *only* such *declarations* of party preference that amended § 495a(2) exempts from disclosure. With this in mind, we conclude that the statutory exemption from disclosure under FOIA applies neither to these "separate record[s]," nor to the information contained therein.

---

[74] *State News*, 274 Mich App at 567.

[75] *Id.*

[76] MCL 168.615c(3), as added by 2007 PA 52.

Moreover, the disclosure of information regarding the ballots that electors voted in the 2008 presidential primary is not the disclosure of personal information. But even if it were, such disclosure would not constitute a "clearly unwarranted" invasion of an individual's privacy. Thus, we conclude that the privacy exemption from disclosure under FOIA also does not apply to these "separate record[s]" or to the information contained in them.

Affirmed. No costs, a public question being involved.

BORRELLO, P.J., concurred.

K. F. KELLY, J. (*dissenting*). I respectfully dissent from my distinguished colleagues' conclusion that the requested records are not exempt from disclosure under the statutory and privacy exemptions of the Freedom of Information Act (FOIA), MCL 15.231 *et seq.* In my view, the information collected during the 2008 presidential primary is information protected by statute and its disclosure would constitute a "clearly unwarranted invasion" of an individual's privacy, and thus is exempt from disclosure under the FOIA.

I. HISTORICAL BACKGROUND AND PROCEDURAL HISTORY

Michigan's election law governs the selection of public officials to public office and is meant to ensure the purity and integrity of elections. 1954 PA 116, enacting MCL 168.1 *et seq.*; *Taylor v Currie*, 277 Mich App 85, 96; 743 NW2d 571 (2007). A particular set of rules applies to presidential primary elections, by which voters of political parties determine which nominees will run in the general presidential election. See *O'Hara v Wayne Co Clerk*, 238 Mich App 611, 614-615; 607 NW2d 380 (1999). The presidential primary election rules control

the selection of nominees for each party, the choice of delegates, and voting requirements for individuals voting in the primary. Michigan Department of State, Bureau of Elections, *Michigan Presidential Primary Facts & Statistics* (October 16, 2006). Historically, Michigan has employed either a "closed" or an "open" primary election system; generally, the former system requires voters to disclose their political party preference before they are eligible to vote in the election, while the latter allows electors to vote in the primary without disclosing any party preference beforehand. Because an overview of Michigan's primary election system informs my viewpoint, I briefly discuss the relevant history below.

### A. MICHIGAN'S 1988 PRIMARY ELECTION LAW

In 1988, Michigan used a closed primary system. MCL 168.495(1)(k), as amended by 1988 PA 275 (1988 election law). In order to vote in the primary, individuals were required to declare their party preference on their registration record at least 30 days before the primary. MCL 168.523(3), as amended by 1988 PA 275. An individual who properly declared himself or herself as a Republican, for example, would be eligible to vote only for Republican candidates, as well as nonpartisan candidates. The converse would be true for a Democrat. Voters who did not declare a preference were not eligible to vote in the presidential primaries. For voters who did submit a declaration, the information regarding the voters' party preference was captured, recorded, and maintained on their registration files with the Secretary of State. MCL 168.495a, as added by 1988 PA 275. The 1988 election law did not address whether this information, including voters' identifying information and party preference infor-

mation, was disclosable to the general public or whether this information could be deleted from a voter's file.

### B. MICHIGAN'S PRIMARY ELECTION LAW BETWEEN 1995 AND 2003

The requirement that voters declare a political preference, and the lack of protection as to that information, caused a public outcry.[1] In response to the public's concern over the privacy of their political preferences, the Legislature amended the election law to require open primaries. MCL 168.495, as amended by 1995 PA 87. Under this system, it was no longer necessary for electors to disclose their party preferences in order to vote in the primary. Rather, voters arriving at the polls on the day of the primary election were given access to both parties' ballots. The voter would then, in the privacy of the election booth, select the party primary in which he or she wanted to

---

[1] A Senate Fiscal Agency bill analysis cited "public outrage" as a reason for changing the primary election system from a closed system to an open one. Specifically, it reasoned:

> It has become clear that while some voters will register their party preference before voting, many feel that it is an intrusion on their right to a secret ballot, and simply will not divulge that information in order to be allowed to vote. . . . While [changes to party rules allowing undeclared voters to vote] made it less likely that a registered voter would be turned away at the polls, the fact remained that an examination of voting records would reveal [the] party's primary in which the person voted. What the voters of Michigan want is a return to the time-honored tradition of the secret ballot. The bill, by re-establishing an open primary, would fulfill that desire. [Senate Fiscal Agency Bill Analysis, HB 4435, May 30, 1995.]

While legislative history is not relevant in construing the meaning of a statute, amendments to legislation *are* relevant in the context of the FOIA's privacy exemption. When FOIA exemptions are at issue, Legislative enactments may be considered as some evidence of the community's mores and values. See *Mich Federation of Teachers v Univ of Mich*, 481 Mich 657, 677 n 59; 753 NW2d 28 (2008) (noting recent legislative changes as indicative of a community's customs).

participate. The ballot the voter selected was not recorded by voting officials and no reference whatsoever to a voter's selection was created, or maintained, in a voter's registration file. Nonetheless, for voters who previously voted in a closed primary, their prior political declarations remained on file as a public record.

Also in 1995, the Legislature further amended the election law to provide that voters' declarations of party preferences are not disclosable through the FOIA. MCL 168.495a, as amended by 1995 PA 213 (the 1995 FOIA provision). Specifically, that provision provided:

> (1) If an elector declared a party preference or no party preference as previously provided under this act for the purpose of voting in a statewide presidential primary election, a clerk or authorized assistant to the clerk may remove that declaration from the precinct registration file and the master registration file of that elector and the precinct registration list, if applicable.

> (2) Beginning on [November 29, 1995], a person making a request under the freedom of information act, Act No. 442 of the Public Acts of 1976, being sections 15.231 to 15.246 of the Michigan Compiled Laws, is not entitled to receive a copy of a portion of a voter registration record that contains a declaration of party preference or no party preference of an elector. Beginning on the effective date of the amendatory act that added this sentence, a clerk or any other person shall not release a copy of a portion of a voter registration record that contains a declaration of party preference or no party preference of an elector. [MCL 168.495a, as amended by 1995 PA 213.]

In other words, as of 1995, Michigan employed an open primary system that did not require a declaration of, and did not record, electors' political preferences, and which also prohibited the disclosure through the FOIA of voter registration records containing any such political preference. Between 1995 and 2007, a number of

additional amendments were made to Michigan's presidential primary election law, the last in 2003, but none of these affected the election system's status as an open primary system that prohibited disclosure of voter registration records containing political preferences. See 1999 PA 72; 2003 PA 13.

## C. MICHIGAN'S 2007 PRIMARY ELECTION LAW

Before the 2008 presidential primary, the Legislature again amended Michigan's election law to employ a semi-closed primary process. See MCL 168.615c, as added by 2007 PA 52 (2007 election statute). Under this new amendatory act,[2] there was no requirement that a voter declare a party preference 30 days ahead of time in order to vote in the presidential primary. Rather, voters arriving at the polls were required to indicate in writing on a form provided by the Secretary of State's office which ballot they preferred, Democratic or Republican. MCL 168.615c(1). When the voter selected his or her ballot, city or township clerks were required to capture this information in a separate record, which contained the printed name, address, qualified voter file number of each voter, and the political party ballot the voter had selected. MCL 168.615c(3).

Significantly, the 2007 election statute also included a nonseverability clause. 2007 PA 52, enacting § 1. That provision provided:

> If any portion of this amendatory act or the application of this amendatory act to any person or circumstances is found invalid by a court, it is the intent of the legislature that the provisions of this amendatory act are nonseverable and that the remainder of the amendatory act shall be invalid, inoperable, and without effect.

---

[2] The 2007 election law amended seven provisions of the existing election law, added three new sections, and contained two enactments.

In addition, the 2007 election statute repealed certain sections of Michigan's election law, including the 1995 FOIA provision, MCL 168.495a. 2007 PA 52, enacting § 2 (the repealer). In its place, the 2007 election law provided its own FOIA provision, which provided:

> Except as otherwise provided in this section, the information acquired or in the possession of a pubic body indicating which participating political party ballot an elector selected at a presidential primary is confidential, exempt from disclosure under the [FOIA], and shall not be disclosed to any person for any reason. [MCL 168.615c(4), as added by 2007 PA 52.]

The 2007 election statute went into effect on September 4, 2007.

### D. THE 2008 PRESIDENTIAL PRIMARY

The 2008 primary election was carried out according to the 2007 election statute. However, shortly after the 2008 primary, a federal district court declared § 615c of the 2007 election statute unconstitutional as a violation of the United States Constitution's Equal Protection Clause in *Green Party of Mich v Mich Secretary of State*, 541 F Supp 2d 912, 924 (ED Mich, 2008). Accordingly, because of the 2007 election law's non-severability clause, the entire amendatory act fell together and it became null and void. See, e.g., *John Spry Lumber Co v Sault Savings Bank Loan & Trust Co*, 77 Mich 199, 200-202; 43 NW 778 (1889) (concluding that all provisions of a nonseverable unconstitutional statute fall together, leaving the prior law intact); *M & S Builders v Dearborn*, 344 Mich 17, 19-20; 73 NW2d 283 (1955) (finding that a repeal became invalid with the rest of an amendment that was declared invalid, thus reviving the prior law). Thus, the repealer was struck down, as was the 2007 election law's FOIA

provision. As a result, and as the parties agree, Michigan's prior election law, as it stood in 2003, applies to this matter.

### E. PLAINTIFF'S FOIA REQUEST

On March 26, 2008, the same day the federal court announced its decision, plaintiff, Practical Political Consulting, Inc., submitted a FOIA request to defendants. Specifically, plaintiff requested "all voter history [of the 2008 presidential primary election] including which ballot, [Democratic or Republican], each voter selected." This information was the information collected pursuant to the 2007 election statute.

On April 17, 2008, defendants denied the FOIA request, reasoning that the requested documents were not public records and were exempt from disclosure under the statutory exemption of the FOIA, MCL 15.243(1)(d), which provides:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:
>
> *    *    *
>
> · (d) Records or information specifically described and exempted from disclosure by statute.

Defendants also reasoned that the party preference information was exempt under the FOIA's privacy exemption, which states:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:
>
> (a) Information of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy. [MCL 15.243(1)(a).]

More specifically, defendants posited that the information was protected from disclosure under either the 2007 election statute's FOIA provision or its predecessor provision, the 1995 FOIA provision, MCL 168.495a; and, further, that the records contained information of a personal nature, the disclosure of which would not provide meaningful insight into the workings of the government, and would be a clearly unwarranted invasion of individuals' privacy.

As a result of defendants' denial, plaintiff sought a judgment in the trial court declaring defendants to be in violation of the FOIA. On the parties' cross-motions for summary disposition, the trial court ruled in plaintiff's favor. It found that the records created were public records and that neither exemption applied.

Defendants appeal as of right, asserting that the records, and the information contained therein, are exempt under the FOIA.[3] Disclosure of the requested records was stayed pending the outcome of this appeal.

## II. STANDARDS OF REVIEW

Whether a public record is exempt from disclosure pursuant to the FOIA is a question of law reviewed de novo. *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 471-472; 719 NW2d 19 (2006). In addition, review of the trial court's decision on the parties' motions for summary disposition is also de novo.[4] *Campbell v Dep't of Human Servs*, 286 Mich App

---

[3] On appeal, defendants no longer contend that the records are not "public records."

[4] Because the trial court considered information outside the pleadings, I consider the court's decision to be based on MCR 2.116(C)(10). A motion under this subrule is properly granted if there is no genuine issue of material fact and judgment is proper as a matter of law. *Farm Bureau Ins Co v Abalos*, 277 Mich App 41, 43-44; 742 NW2d 624 (2007).

230, 234-235; 780 NW2d 586 (2009). Further, to the extent that this Court must engage in statutory construction, review is, again, de novo. *Mich Federation of Teachers v Univ of Mich*, 481 Mich 657, 664; 753 NW2d 28 (2008). The goal in interpreting a statute is to ascertain the Legislature's intent. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). The first step in doing so is looking to the language used. *Id.* at 549. Effect must be given to each word, reading provisions as a whole, and in the context of the entire statute. *Green v Ziegelman*, 282 Mich App 292, 301-302; 767 NW2d 660 (2009). If the language is clear and unambiguous, the statute must be applied as written. *Beattie v Mickalich*, 284 Mich App 564, 570; 773 NW2d 748 (2009). In such instances, judicial construction is neither necessary nor permitted. *Id.* Further, because the FOIA is a prodisclosure statute, "its disclosure provisions [are interpreted] broadly to allow public access, and . . . its exceptions [are interpreted] narrowly so that . . . its disclosure provisions [are not undermined]." *State News v Mich State Univ*, 274 Mich App 558, 567; 735 NW2d 649 (2007) (*State News I*), rev'd in part on other grounds 481 Mich 692 (2008).

### III. THE FOIA

The purpose of Michigan's FOIA statute is to provide the people of Michigan full and complete information regarding the government's affairs and the official actions of governmental officials and employees. MCL 15.231(2); *Taylor v Lansing Bd of Water & Light*, 272 Mich App 200, 204; 725 NW2d 84 (2006). Disclosure of this information is designed to promote governmental accountability and is imperative to a democracy; full disclosure of governmental activity informs the citizenry so that they may fully participate in the democratic process. See MCL 15.231(2);

*State News I, supra* at 567-568. Stated differently, the FOIA functions to allow the citizenry to hold public officials accountable for the decisions they make on behalf of those citizens. See, e.g., *Detroit Free Press, Inc v City of Warren*, 250 Mich App 164, 168-169; 645 NW2d 71 (2002) ("Under . . . FOIA, citizens are entitled to obtain information regarding the manner in which public employees are fulfilling their public responsibilities."); *Manning v East Tawas*, 234 Mich App 244, 248; 593 NW2d 649 (1999) (noting that the FOIA is a manifestation of the state's public policy recognizing the need that public officials be held accountable for their official actions and citizens be informed); *Thomas v New Baltimore*, 254 Mich App 196, 201; 657 NW2d 530 (2002) (explaining that the FOIA was enacted "recognizing the need for citizens to be informed so that they may fully participate in the democratic process and thereby hold public officials accountable for the manner in which they discharge their duties"). Accordingly, Michigan's FOIA statute requires a public body to disclose public records to individuals who request to inspect, copy, or receive copies of its public records. MCL 15.233; *Scharret v City of Berkley*, 249 Mich App 405, 411-412; 642 NW2d 685 (2002).

However, certain public records need not be disclosed if they are exempt from disclosure under one of the exemptions articulated in MCL 15.243. If the requested public records fall within one of these exceptions, it is within the public body's discretion whether to release the information. *Bradley v Saranac Community Sch Bd of Ed*, 455 Mich 285, 293; 565 NW2d 650 (1997). In determining whether an exemption applies, the identity of the requester is irrelevant, as is the initial and the future use of the information. *State Employees Ass'n v Dep't of Mgt & Budget*, 428 Mich 104, 121; 404 NW2d 606 (1987) (opinion by CAVANAGH, J.). Moreover, only the circumstances known to the public body at the time of

the request are relevant to whether an exemption precludes disclosure. *State News v Mich State Univ*, 481 Mich 692, 703; 753 NW2d 20 (2008) (*State News II*). Further, because the FOIA's core purpose is the disclosure of public records, the courts of this state have narrowly construed the FOIA's exemptions in favor of disclosure. *State News I, supra* at 567.

### IV. MCL 15.243(1)(d): THE FOIA'S STATUTORY EXEMPTION

On appeal, defendants first argue that the trial court erred by determining that the information collected at the 2008 primary election was not exempt from disclosure under the FOIA's statutory exemption. I would agree.

The FOIA's statutory exemption provides:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:
>
> * * *
>
> (d) Records *or information specifically described* and exempted from disclosure by statute. [MCL 15.243(1)(d) (emphasis added).]

By its terms, this exemption incorporates statutes that specifically exempt certain records or information from disclosure through the FOIA. Accordingly, there must be a statute specifically exempting the "[r]ecords or information specifically described" in order for this exemption to apply. Significantly, the provision uses the conjunction "or" between the words "[r]ecords" and "information." The term "or" is to be interpreted literally unless it renders a statute dubious; the word "or" denotes a choice or alternative. *Random House Webster's College Dictionary* (1997); see *Amerisure Ins Co v Plumb*, 282 Mich App 417, 429; 766 NW2d 878

(2009). Thus, a statute may specifically describe records that are exempt from disclosure or may specifically describe information that is exempt from disclosure. The term "record" means information preserved in writing or some other documentary medium, whereas "information" denotes knowledge communicated or received. *Random House Webster's College Dictionary* (1997). Accordingly, the FOIA's statutory exemption, MCL 15.243(1)(d), protects from disclosure records that are specifically described by statute *or* information that is specifically described by statute.

Here, the relevant statutory provision, the 1995 FOIA provision, states:

> (1) If an elector declared a party preference or no party preference *as previously provided under this act* for the purpose of voting in a statewide presidential primary election, a clerk or authorized assistant to the clerk may remove that declaration from the precinct registration file and the master registration file of that elector and the precinct registration list, if applicable.

> (2) *Beginning on [November 29, 1995],* a person making a request under the freedom of information act, Act No. 442 of the Public Acts of 1976, being sections 15.231 to 15.246 of the Michigan Compiled Laws, is not entitled to receive a copy of a portion of a voter registration record that contains a declaration of party preference or no party preference of an elector. Beginning on the effective date of the amendatory act that added this sentence, a clerk or any other person shall not release a copy of a portion of a voter registration record that contains a declaration of party preference or no party preference of an elector. [MCL 168.495a, as amended by 1995 PA 213 (emphasis added).]

It is plaintiff's contention that when these subsections are read together, subsection (2) only applies to voter registration records created before the 1995 FOIA provision. I disagree. Subsection (1) of this provision

permits a clerk or other authorized person to remove, in his or her discretion, "a party preference or no party preference *as previously provided under this act* for the purpose of voting in a statewide presidential primary election . . . ." This subsection specifically references removal of party preference information that was previously captured and recorded pursuant to previous versions of the election law.

Comparatively, subsection (2) prohibits disclosure through the FOIA of "a copy of a portion of a voter registration record that contains a declaration of party preference or no party preference of an elector" from November 29, 1995, on and forward. Importantly, subsection (2), unlike subsection (1), makes no reference whatsoever to whether the party preference information was collected under the previous election law; it merely forbids disclosure of "a copy of a portion of a voter registration record that contains a declaration of party preference," effective November 29, 1995. The phrase "as previously provided under this act," or other limiting language on how party preference information was obtained, is specifically absent from subsection (2).

Given the plain language of these two provisions, it is my view that the Legislature intended to accomplish two things through the 1995 FOIA provision. First, under subsection (1), it permits the removal of all party preference information previously captured. Clearly, this position does not diverge from the majority's view on this point. Second, it prohibits the disclosure of party preference information in the future. The Legislature did not intend to limit subsection (2)'s terms to political preference information collected under the prior law because the Legislature explicitly chose not to use the phrase "as previously provided under this act," or other similar limiting language. Cf. *Houghton Lake Area*

*Tourism & Convention Bureau v Wood*, 255 Mich App 127, 151; 662 NW2d 758 (2003) (explaining doctrine of *expressio unius est exclusio alterius*). Thus, contrary to plaintiff's argument, the protection from disclosure provided by subsection (2) applies to all portions of voter registration records containing a party declaration, including those records created in the future. It is in the application of this provision to the present matter that my viewpoint diverges from the majority's opinion.

The majority agrees with plaintiff that § 495a(2) does not apply to the records created in the 2008 primary because neither the records nor the information specifically described is the same as that protected by the 1995 FOIA provision, § 495a(2). While it may be true that the "voter registration record[s]" protected by § 495a(2) are not the exact same records in form that are specifically described, the substance, or the information specifically described by § 495a(2) and contained in those records, is the same.

Section 495a(2), the 1995 FOIA provision, specifically protects from disclosure through the FOIA an elector's "declaration of party preference . . . ." A "declaration" is a "proclamation," an "announcement," or an "act of declaring" something. *Random House Webster's College Dictionary* (1997). "Preference" is defined as "something preferred [or given priority]; choice; [or] selection." *Random House Webster's College Dictionary* (1997). Clearly, an elector arriving at the polls for the 2008 primary had to proclaim which party he or she preferred to vote for in order to vote, just as voters who voted in previous closed primaries had to declare which party they wished to vote for in order to vote. In both instances, eligibility to vote was conditioned upon a party preference declaration. In my view, this information is specifically described and protected by the 1995 FOIA provision, § 495a(2).

The majority, however, like plaintiff, attempts to draw a distinction between a voter's "declaration of party preference" in the closed primaries and a voter's selection of a party ballot in the semi-closed primary of 2008, to conclude that the information described is not protected by the 1995 FOIA provision, § 495a(2). Stated more succinctly, the majority posits that the selection of a party ballot is not synonymous with a declaration of party preference. This is an exercise in semantics and, in my view, the "distinction" created is one without a difference. Whether the information was collected during the closed primaries of 1988-1995 or during the 2008 primary election is immaterial. In each instance, the information captured, although collected by a different procedure, is the same: an elector wishing to vote in the primary was required to "proclaim" the party's primary he or she "preferred" to vote in. In both instances, voters made a "declaration" of party preference. Further, I would point out that the Legislature deliberately chose to use the phrase "declaration of party preference" without any conditional limiting language, such as "declaration of party preference made 30 days before the primary election." The majority's reading of the 1995 FOIA provision, § 495a(2), equates its language with the latter. In my view, such a reading is inapposite to our judicial role. The Legislature chose to use the broad phrase, "declaration of party preference," which plainly and unambiguously encompasses an elector's selection of a party's ballot. Accordingly, I would conclude that the requested information is protected from disclosure by MCL 168.495a(2), as amended by 1995 PA 213, and is therefore exempt under the FOIA's statutory exemption. MCL 15.243(1)(d).

V. MCL 15.243(1)(a): THE FOIA'S PRIVACY EXEMPTION

I would also conclude, contrary to the majority's position, that the requested records are exempt under the FOIA's privacy provision. That exemption excludes from disclosure public records that would result in an unwarranted invasion of an individual's privacy. MCL 15.243(1)(a) states:

> (1) A public body may exempt from disclosure as a public record under this act any of the following:
>
> (a) Information of a personal nature if public disclosure of the information would constitute a clearly unwarranted invasion of an individual's privacy.

In *Mich Federation of Teachers*, *supra* at 675, the Michigan Supreme Court articulated the applicable test under this provision as a two-pronged inquiry. To satisfy the test, (1) the information must be "of a personal nature" and (2) "it must be the case that the public disclosure of that information would constitute a clearly unwarranted invasion of an individual's privacy." *Id.* (quotation marks omitted).

Before engaging in this analysis, I note that this notion of the right to privacy embodied by MCL 15.243(1)(a) is not defined by the Legislature. In recognition of the nebulous nature of that term,[5] our Supreme Court has indicated that the courts of this state may "look to the common law and constitutional law to guide [them] in determining whether disclosure of the

---

[5] Indeed, after over a century since Samuel D. Warren and future Supreme Court Justice Louis D. Brandeis recognized the individual's common-law claim to a right of privacy, see Warren & Brandeis, *The right to privacy*, 4 Harv L R 193 (1890), the concept remains problematic and unwieldy. The concept is often equated with personal autonomy, e.g., the right to be free from unwarranted searches and seizures and the right to reproductive freedom, and courts have struggled to define its contours with exactness.

requested information would violate any privacy rights under the FOIA." *Swickard v Wayne Co Med Examiner*, 438 Mich 536, 547; 475 NW2d 304 (1991); see also *Bradley, supra* at 294. In doing so, "[t]he contours and limits [of privacy under MCL 15.243(1)(a)] are . . . to be determined by the court, as the trier of fact, on a case-by-case basis in the tradition of the common law." *State Employees Ass'n, supra* at 123 (opinion by CAVANAGH, J.). Further, in applying this provision, the courts of this state have looked to federal law for guidance. *Mager v Dep't of State Police*, 460 Mich 134, 144; 595 NW2d 142 (1999).[6] Thus, in my view, the test articulated in *Mich Federation of Teachers* must be applied to the facts of the present matter consistently with these overarching principles.

A. PERSONAL NATURE

As already stated, the first prong of the test is satisfied if the requested information is of a "personal nature." Information is of a personal nature if it is "intimate, embarrassing, private, or confidential . . . ." *Mich Federation of Teachers, supra* at 676 (emphasis omitted). The inquiry must be guided by, and evaluated in light of, "the customs, mores, or ordinary views of the community . . . ." *Herald Co v Bay City*, 463 Mich 111, 123-124; 614 NW2d 873 (2000) (quotation marks and citations omitted). In

---

[6] The federal FOIA privacy exemption is worded differently than Michigan's sister provision. It states that the federal FOIA does not apply to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 USC 552(b)(6). The only significant distinction between the federal statute and the Michigan statute, is the federal provision's use of the terms, "personnel and medical files and similar files." The Michigan statute simply uses the phrase "personal nature." Despite this difference, the second part of the analysis requiring a balancing of the public's interest against individuals' privacy interests is largely the same.

considering the information in this context, it is important to recognize that simply because the information may be disclosed in one public sphere, does not necessarily mean that the information is not of a personal nature. *Mich Federation of Teachers, supra* at 680. Moreover, an individual's ability to control the dissemination of the information, for example, by choosing to withhold it from disclosure despite the fact that it may be available elsewhere, is indicative of whether the information is of a personal nature. *Id.*

Oddly, in determining whether the subject information is of a personal nature, the majority ignores this well-established jurisprudence and relies entirely on the language of the 1995 FOIA provision, § 495a(2), and a single case interpreting that provision in an unrelated context. I cannot make sense of, let alone agree with, such a myopic application of the law. In any event, an application of these well-established rules dictates the conclusion that the information is of a personal nature. Specifically, the information requested implicates two separate privacy interests—an individual's privacy interest in his or her political convictions and an individual's privacy interest in his or her personal identifying information—each of which is discussed separately.

### i. PRIVACY INTEREST IN POLITICAL CONVICTIONS

Here, the party preference information, if disclosed, would reveal to the general public that an individual voted on a strictly Republican, or strictly Democratic, ballot in the 2008 presidential primary election. Disclosure would reveal that a person voted for particular types of candidates and an inference could be drawn as to whom an individual voted for on the basis of the makeup of the ballot. It is not difficult to see why an elector might consider this information "intimate, . . .

private, or confidential" and would want to keep this information confidential. Envision a situation, for example, where an elector votes inconsistently with his or her normal political preference.[7] Obviously, some voters would not wish to disclose this fact to third parties. In such instances, public disclosure of party preference information could subject electors to unwanted or unwarranted attention from peers, colleagues, and neighbors and could result in serious discomfort amongst family members. Many electors would undoubtedly avoid disclosing which primary they voted in to avoid these same unpleasant ramifications.[8] Further, in some instances, disclosure could subject electors to harassment or ridicule from those same groups and could impact a person's professional career, especially if that person is employed in a political profession, such as a public officer or an employee of a nonprofit political organization. It is not difficult to imagine that some

---

[7] Electors cross political boundaries for any number of reasons, not limited to: voting for a friend, voting for a preferred candidate, or voting for a weak rival candidate.

[8] I note in passing that the release of this information could also have a chilling effect on some voters' decisions to cross political boundaries and vote for a candidate not associated with the voters' typical political party choices. This is precisely because the release of the information would tend to erode the protections guaranteed by the right to a secret ballot in all elections. Const 1963, art 2, § 4; *Belcher v Ann Arbor Mayor*, 402 Mich 132, 134; 262 NW2d 1 (1978). Electors' votes would no longer be fully cloaked by the shroud of secrecy. A voter's ability to vote his or her conscience without fear of reprisal or retaliation is imperative to a well-functioning democracy. *McIntyre v Ohio Elections Comm*, 514 US 334, 343; 115 S Ct 1511; 131 L Ed 2d 426 (1995). Disclosure of the records in this case would denigrate the protections that the right to a secret ballot is meant to protect and could subject voters to reprisal. As Chief Justice Burger recognized in *Buckley v Valeo*, 424 US 1, 237; 96 S Ct 612; 46 L Ed 2d 659 (1976) (Burger, C.J., concurring in part and dissenting in part), the advent of the secret ballot as a universal practice was one of our nation's greatest political reforms, because privacy with regard to one's political preference is fundamental to a free society.

individuals may interpret a particular elector's vote as a personal affront or a betrayal.

Having listed these possible ramifications as reasons why a person may consider their political preference to be private, I must object to the majority's accusation that such concerns are based on pure speculation, are "imaginary horribles," and are invented out of "whole cloth." First, these concerns are based on plain and simple common sense. It is not surprising, given this nation's political history, that politics, political speech, and support for or opposition to a particular candidate can create arguments and result in heated debates. The majority's refusal to recognize these commonsense concerns and the historical and social context in which a FOIA privacy analysis must be undertaken is baffling.

Second, the newspaper articles, editorials, and letters to the editor referred to in defendants' reply brief on appeal reinforce my position. These articles show that a great deal of discussion was generated regarding the revealing of electors' political preferences during the 1992 presidential primary election. A sampling of these articles include:

> • Simon, *State primary law an invasion of political privacy*, Detroit News (March 24, 1992) ("The ACLU offices were besieged on primary day with calls from voters complaining about . . . having their political party affiliation made a permanent and publicly accessible part of their voting record.").

> • Roelofs and Brandt, *Closed primary shaping up to get a vote of no confidence*, Grand Rapids Press (November 18, 1991) (citing opinions of constituents complaining that closed primary system constituted an "infringement of my privacy").

> • *Keep it open primary preference a private decision*, Lansing State Journal (January 12, 1992) (characterizing system as "traumatic" because it requires a declaration of

party preference "for all the world—most particularly friends, neighbors, and political hacks—to hawk and herald").

• Mitzelfeld, *Requirement to list party angers, turns away voters*, Detroit News (March 18, 1992) ("Voters were so angry Tuesday over Michigan's new party declaration requirement that many stormed out of polling places and refused to cast ballots.").

• Weeks, *March 17 primary turns off voters who don't want to find their names on either party's list*, Detroit News (January 23, 1992) ("State law has the outrageous requirement that the declaration be made 30 days before the election.").

• Waldmeir, *Unless something's done soon, state's closed primary could be the most embarrassing ever*, Detroit News (February 9, 1992) ("Voters are rebelling at being forced to announce to the world—30 days before an election, yet—exactly where they stand . . . .").

While it would not be appropriate for this Court to take judicial notice of these articles for the *truth* of the matters asserted therein, see *People v McKinney*, 258 Mich App 157, 161 n 4; 670 NW2d 254 (2003), I would take judicial notice of the *fact* that a plethora of articles were published and that strong sentiments were in *fact* expressed. The clear conclusion to be drawn is that the public was, indeed, concerned about the privacy of their political convictions and that their concerns were very real. This evidence discredits the majority's contention that no evidence exists to support the public's concern over the privacy of their political information.

But further, these articles are not the only evidentiary measure by which to determine whether the information requested is of a personal nature. Legislative changes are also indicative of the customs, mores, and ordinary views of the community. See *Mich Federation of Teachers, supra* at 677 n 59. It is not difficult to understand why the

caselaw has adopted consideration of legislative changes as an indicator of what a community considers to be important: it is a basic principle of the separation of powers doctrine that the people speak through their elected representatives, not through the courts.

Here, a review of relevant legislative changes lends additional credence to my view, and is additional evidence, that an individual's party preference information is of a personal nature. Michigan's election law has protected this particular information from disclosure for nearly 15 years, since the 1995 FOIA provision was added to the statute. See MCL 168.495a, as amended by 1995 PA 213; MCL 168.615c(4), as added by 2007 PA 52. Equally significant is the fact that the Legislature amended the election law in 1995 from a closed primary system to an open primary system in response to the public's concern regarding the privacy of their political convictions. MCL 168.495, as amended by 1995 PA 87; see also Senate Fiscal Agency Bill Analysis, HB 4435, May 30, 1995. And, just a few months later, the Legislature added the 1995 FOIA provision in order to protect from disclosure party preference information, previously collected or collected in the future. MCL 168.495a, as amended by 1995 PA 213. The 1995 FOIA provision remained the law until the 2007 election statute repealed it and replaced it with its own version that *continued* to protect party preference information from disclosure through the FOIA. The 2007 election statute provided:

> Except as otherwise provided in this section, the information acquired or in the possession of a pubic body indicating which participating political party ballot an elector selected at a presidential primary is confidential, exempt from disclosure under the [FOIA], and shall not be disclosed to any person for any reason. [MCL 168.615c(4), as added by 2007 PA 52.]

Given these unequivocal legislative amendments and the Legislature's *explicit* decision to continue protecting from disclosure party preference information, there can be no clearer signal that the customs, mores, and ordinary views of the community regard party preference as information of a "personal nature." See *Mich Federation of Teachers*, *supra* at 677 n 59 (noting recent legislative changes as indicative of a community's mores).

As I have pointed out, the majority's opinion largely ignores this analysis and asserts that I have wrongly considered a 1995 Senate Fiscal Agency bill analysis in support of my conclusion that the Legislature changed the law in reaction to the public's outrage. However, the majority overlooks, or chooses to ignore, the fact that this analysis is not one of statutory interpretation, where the traditional rules of construction would apply, and would generally preclude the consideration of a legislative bill analysis, but rather is an analysis whether certain information should be considered *of a personal nature* under the FOIA's privacy exemption. And our Supreme Court has directed that this inquiry be undertaken with the mores, values, and ordinary customs of the community in mind, which may include a consideration of legislative changes. Thus, in my view, the legislative changes, the legislative bill analysis, and the various news articles, are some evidence of the community's values and mores, and are indicative of its ordinary customs.

I must emphasize that the majority has taken a "hear no evil, see no evil" approach to this matter by ignoring the social and historical context in which these legislative changes were made. It is true that a Senate Fiscal Agency analysis reflects the opinion of one legislative analyst, not the Legislature. However, it does not logically follow that the Legislature had deaf ears to the

ongoing discussion occurring in the public and that it simply amended the election law randomly. Rather, the clear inference is that the Legislature's amendment at that particular time, amidst the public debate, was in reaction to the public's concerns. The majority displays its opinion in a vacuum. I would conclude, on the basis of the foregoing, that an individual's political preference information is of a personal nature.

### ii. PRIVACY INTEREST IN PERSONAL IDENTIFYING INFORMATION

The second privacy interest implicated in this matter is the individual's interest in protecting his or her personal identifying information. Of initial importance is the fact that information regarding a voter's political preference would be coupled with a voter's name and home address. In *Mich Federation of Teachers*, our Supreme Court, noting the "checkered history" of conflicting jurisprudence on the issue whether home addresses and telephone numbers are of a personal nature, held that personal identifying information, including "home addresses and telephone numbers[,] constitute private information about individuals." *Mich Federation of Teachers, supra* at 677 n 58. The Court stated, "The potential abuses of an individual's identifying information, including his home address and telephone number, are legion." *Id.* at 677. As examples, the Court cited unwelcome masses of junk mail and telephone solicitations. *Id.* On the basis of this reasoning, the Court determined that university employees' addresses and phone numbers was information of a personal nature, even though employees had voluntarily provided the university that information, and that that information was not disclosable to the general public through the FOIA. *Id.* at 682-683.

Similarly, in *United States Dep't of Defense v Fed Labor Relations Auth*, 510 US 487, 500-501; 114 S Ct 1006; 127 L Ed 2d 325 (1994), the United States Supreme Court considered the names and home addresses of nonunion employees to be private information of which the employees had *"some* nontrivial privacy interest in [its] nondisclosure. . . ."* In that case, several unions were seeking the names and home addresses of nonunion employees through the federal FOIA statute. *Id.* at 489-490. The Court noted the innumerous and unwanted intrusions into the home that disclosure would result in, including unwanted mail and possibly visits, and reasoned that it was "reluctant to disparage the privacy of the home, which is accorded special consideration in our Constitution, laws, and traditions." *Id.* at 501. Ultimately, the Court did not release the records in light of the public's nonexistent interest in the records. *Id.* at 502.

The same concerns are at play in the instant case. Disclosure of electors' names, party preferences, and home addresses would subject many individuals to unwanted mass mailings and a deluge of junk mail. Anyone in the general public, including commercial vendors and other special interest groups, would be able to access the information and would be able to solicit electors through the mail or in person by going door-to-door. Many individuals would find this intrusion into their homes to be an unwanted annoyance and a hassle. It is also not difficult to see, as I have already discussed, how the party preference information in particular could subject some individuals to unwanted attention, discomfort, harassment, or retaliation. Given the foregoing, and the Court's decision in *Mich Federation of Teachers* as well as the Supreme Court's decision in *United States Dep't of Defense*, I would hold that voters' names and home addresses, *when coupled with their*

*party preferences* in the 2008 primary election, is personal information that is intimate and private, and is undoubtedly of a "personal nature."

### iii. *FERENCY v SECRETARY OF STATE*

I also disagree with the majority's conclusion, relying on dicta from *Ferency v Secretary of State*, 190 Mich App 398; 476 NW2d 417 (1991), that the requested information is not of a personal nature because an individual has no privacy expectation in his or her party affiliation voluntarily disclosed in a primary election. I respectfully submit that the majority's reliance on *Ferency* is misplaced.

In *Ferency*, the plaintiff sued alleging that Michigan's 1988 election law violated several provisions of Michigan's Constitution. Relevant to this appeal was the plaintiff's argument that the 1988 election law violated the secrecy of the ballot, Const 1963, art 2, § 4, because the 1988 election law required voters to declare their party preference in order to vote in the primary. *Ferency, supra* at 413. The *Ferency* Court disagreed. It reasoned that electors' exact votes could not be ascertained by knowledge of an elector's party preference declaration and therefore there was no violation of the right to a secret ballot. *Id.* at 414. It further stated, in passing:

> [P]rimaries remain primarily party functions and thus *there is a legitimate state interest in restricting access by voters to the primary elections* and, more to the point, *in requiring voters to publicly identify their party affiliation in order to be eligible to vote in a primary election.* That is, because primary elections are primarily party functions, it is not unreasonable to expect the voter *to be willing* to disclose his party affiliation in order to participate in that party's internal operations, such as the selection of its nominee for a particular office. This does not violate the secrecy of the ballot, because there is no legitimate interest

by the voter *to shield his affiliation from a party* where that voter decides to participate in the party activities and where the ballot remains secret once the voter gets in the primary election booth. [*Id.* at 418 (emphasis added).]

The *Ferency* Court's statements, while largely dicta, indicate that electors have no privacy interest in their party preference when they *voluntarily* decide to disclose it to their party. These statements further suggest that the individual's privacy interest must be balanced against a party's legitimate interest in restricting voter access to its primary elections, e.g., by preventing nonparty members from hijacking the party by voting for the weaker party candidate. *Id.* This latter concern implicates political parties' freedom of association in the context of primary elections and balances that interest against electors' interest in the secrecy of the ballot. See, e.g., *California Democratic Party v Jones*, 530 US 567, 583-585; 120 S Ct 2402; 147 L Ed 2d 502 (2000).[9] It is important to note, however, that *Ferency*'s statements are not central to its holding regarding the secrecy of the ballot.

---

[9] *California Democratic Party*, which plaintiff also relies on, was a First Amendment case that applied an analysis similar to *Ferency*. In that case, several Californian political parties brought suit alleging that California's "blanket" primary system violated their right to freedom of association under the First Amendment. *California Democratic Party*, *supra* at 571. This system, adopted by initiative Proposition 198, allowed all Californian voters to vote on a ballot containing all the primary candidates from all the political parties. *Id.* at 570. On certiorari to the United States Supreme Court, the Court found that Proposition 198 violated political parties' freedom of association by forcing association with unaffiliated voters and was unconstitutional unless it was narrowly tailored to advance a compelling state interest. *Id.* at 584-585. The state of California asserted voters' right to privacy as a compelling interest in an attempt to justify Proposition 198. *Id.* at 584. The Supreme Court, however, concluded that voters' privacy interests in their party affiliations when voting in a primary is not a compelling interest that would justify California's "blanket" primary system. *Id.* at 584-585. In determining that voters' privacy did not constitute such a compelling interest, the Court stated:

I have no quarrel with the proposition that *Ferency* stands for. However, *Ferency* does not address Michigan's FOIA statute. Instead, it addresses entirely different claims and concepts than those advanced in this case. *Ferency* addressed whether Michigan's 1988 election law violated the secrecy of the ballot protected by the Michigan Constitution. It is true that voters' "privacy" interests were implicated; however, it arose as an issue ancillary to the main thrust of the litigants' claims and it was viewed in the context of, and balanced against, political parties' right to freedom of association. As such, how privacy conceptually relates to the underlying claims in *Ferency* is entirely different from how that concept relates to the claim in this case. This is because the interests at stake in *Ferency* are not at stake in the instant matter; political parties' interests in controlling who votes in their primaries are not implicated under the FOIA. Thus, *Ferency* is simply not instructive on whether an elector has a legitimate privacy interest in shielding political party preference information from the *general public at large* and is not indicative, under a FOIA analysis, whether such information is of a personal nature. Thus, it is my view that *Ferency* is not controlling in the present matter and is largely irrelevant.

---

As for the protection of privacy: The specific privacy interest at issue is not the confidentiality of medical records or personal finances, but confidentiality of one's party affiliation. Even if (as seems unlikely) a scheme for administering a closed primary could not be devised in which the voter's declaration of party affiliation would not be public information, we do not think that the State's interest in assuring the privacy of this piece of information in all cases can conceivably be considered a "compelling" one. If such information were generally so sacrosanct, federal statutes would not require a declaration of party affiliation as a condition of appointment to certain offices. [*Id.* at 585.]

Thus, like the *Ferency* case, *California Democratic Party* considers electors' privacy interests in primary elections, but only through the lens of the First Amendment.

However, to the limited extent that *Ferency* is instructive, its rationale does not support a conclusion that voters have no privacy interest in their political preferences declared for purposes of voting in a primary. *Ferency* balanced voters' privacy interests against *political parties' interests* in controlling the type of voters who vote in their primaries. It also indicated that voters have no privacy interest when they *consent* to disclosure of their political party preferences *to their parties*. Let me be clear that I agree with this statement; certainly, a voter's name, home address, and party preference is not of a private nature when the voter *consents* to its disclosure to his or her party of choice. However, this does not translate to mean that a voter has no legitimate privacy interest in preventing the disclosure of that same information to others or *to the general public*. Here, it is the *public's* right to know the information and to hold the government accountable for its actions that must be balanced against individuals' privacy interests. A voter may, understandably, refuse to disclose that information to an employer, a friend, or even a family member. "The disclosure of information of a personal nature into the public sphere in certain instances does not automatically remove the protection of the privacy exemption and subject the information to disclosure in every other circumstance." *Mich Federation of Teachers, supra* at 680; see also *United States Dep't of Defense, supra* at 500 ("An individual's interest in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form."). This nuance is one that the majority has overlooked. I would conclude that the information requested is of a personal nature.

### B. UNWARRANTED INVASION OF PRIVACY

But simply because the information sought is of a

personal nature does not necessarily compel the conclusion that its disclosure is prohibited. Rather, it is the second prong of the test announced in *Mich Federation of Teachers* that must be considered: whether public disclosure of the party preference information coupled with voters' names and addresses would constitute a "clearly unwarranted invasion" of an individual's privacy. *Mich Federation of Teachers, supra* at 675. This inquiry requires "balanc[ing] the public['s] interest in disclosure against the interest [the Legislature] intended the exemption to protect[.] . . . [T]he only relevant public interest in disclosure to be weighed in this balance is the extent to which disclosure would serve the core purpose of the FOIA, which is contributing significantly to public understanding of the operations or activities of the government." *Id.* at 673 quoting *Mager, supra* at 145, quoting *United States Dep't of Defense, supra* at 495 (quotation marks omitted). Under the circumstances of this case, special emphasis must be placed on the fact that it is the *public's interest* that is to be weighed against individuals' privacy interests—the special interests of the requester puts it in no better position than a member of the general public. See *United States Dep't of Defense, supra* at 499-500. In other words, the *identity of the requester and the requester's interest in the information is irrelevant,* as is the requestor's initial and future use of that information. *State Employees Ass'n, supra* at 121 (opinion by CAVANAGH, J.).

Here, defendants concede that the Secretary of State's office has released the names and addresses of registered voters. And, although this information is of a personal nature, see *Mich Federation of Teachers, supra* at 677 n 58, it is clear that disclosure of these names and addresses alone is a warranted invasion of personal

privacy. Namely, disclosure of that information is necessary to inform the general public whether voters are properly registered and whether they are voting in the proper local precinct. Disclosure of such information, if requested, is necessary to hold the government accountable for the integrity and purity of this state's elections.

However, the public's interest in the disclosure of voters' names and addresses coupled with their party preference information is negligible. Contrary to the majority's conclusion, I simply fail to see how disclosure of this information in this form is necessary to shed light on the government's operations. Indeed, disclosure would reveal whether the Secretary of State's office actually performed the task required of it under 2007 PA 52. This result, however, could just as easily be obtained by releasing redacted versions of the records, i.e., by redacting voter's names and addresses and releasing the ballot selections alone.[10] Given the foregoing, it is likely that plaintiff is not asking for the records

[10] The majority asserts that disclosure of the requested information "*would* inform the public to what extent the Secretary and the various local clerks carried out the requirements of 2007 PA 52." It then states, "[T]here is *no other way by which* these individuals can be held accountable for their implementation of a then-valid statute." (Emphasis added.) This position is simply wrong. Logistically, the same goal can be accomplished without intruding on individual's privacy. The Secretary of State's office has already released the names and addresses of those individuals who voted in the 2008 primary. This information allows the general public to make certain that the state ensured that individuals voted in the proper precinct, but it would not show, for example, whether the number of voting Democrats matches the number reported, and vice versa for Republicans. However, the release of the same records, containing redacted names and addresses but showing the party ballot selected, would have the result of showing that the correct, or incorrect, numbers voted in each primary. Ultimately, the same goal is reached without violating individuals' privacy—the general public would be able to know whether election officials properly carried out their task under 2007 PA 52. Nothing additional would be gained by releasing the information in the form requested.

to find out "what the government is up to" but to obtain the names and addresses of individuals affiliated with particular political parties for its business purposes. The requester's identity and special interests are completely irrelevant to a FOIA analysis. *State Employees Ass'n, supra* at 121. Further, "disclosure of information about private citizens that is accumulated in various governmental files but that reveals little or nothing about an agency's own conduct [would not advance the core purpose of FOIA]." *Mager, supra* at 145 (quotation marks and citation omitted). And, in the absence of any compelling public interest in the information in the form requested, "supplying lists of voters to private parties . . . [smacks of] an abuse of the elective franchise." *Grebner v Michigan*, 480 Mich 939, 944 (2007) (CAVANAGH, J., dissenting).

Finally, weighing this virtually nonexistent public interest in disclosure against electors' interests in controlling their personal information dictates the conclusion that disclosure would be an unwarranted invasion of voters' privacy. Because the public's interest in the information is small, even a very slight privacy interest would suffice to outweigh the public's interest in the records. Thus, it is not necessary to quantify the privacy interest involved. However, I would go so far as to surmise that the interest involved is, at the very least, a moderate to strong one. As I have already discussed, electors have an interest in avoiding harassment, reprisal, or retaliation that may result from public disclosure of such information. Obviously, some electors will have a more heightened interest in keeping this information private than others. For example, disclosure could potentially be particularly damaging to a public official or to an employee of a nonprofit political organization. Moreover, many voters may wish to avoid the perceived annoyance and hassle of receiving large

amounts of junk mail and solicitations that would result from the disclosure of their particular political convictions. Indeed, the privacy interest implicated here is far from insubstantial in consideration of the fact that the information would be accessible to all members of the public, including commercial advertisers and other solicitors. I would follow the lead of the United States Supreme Court and avoid a decision that would disparage the privacy of the home. *United States Dep't of Defense, supra* at 501. Accordingly, I would conclude that the public's interest is outweighed by the privacy interest the Legislature intended to protect under MCL 15.243(1)(a).

I would reverse.