YOUNG, C.J.
The Civil Service Commission’s rules allow public collective bargaining agreements that require collection of a mandatory service fee, also known as an “agency shop fee,” from union-eligible employees who opt out of union membership. Civ Serv R 6-7.2. Although we conclude that public collective bargaining is a method by which the Civil Service Commission (the commission) may choose to exercise its constitutional duties, we hold that the commission may not effectively require civil servants to fund the commission’s own administrative operations. Accordingly, we affirm, albeit on different grounds, the judgment of the Court of Appeals.
FACTS AND HISTORY
The legislation commonly known as the “Right to Work” laws—Public Acts 348 and 349 of 2012—were made effective March 27, 2013. 2012 PA 348 governs private employers and 2012 PA 349 governs public employers. This case concerns the constitutionality of *285 2012 PA 349. Section 3 of 2012 PA 349 amends the public employment relations act (PERA), MCL 423.201 et seq., to provide that public employers may not require their employees to join a union or pay union dues, fees, or other expenses “as a condition of obtaining or continuing public employment. . . .” MCL 423.210(3) (“[A]n individual shall not be required as a condition of obtaining or continuing public employment to do any of the following: . . . (c) [p]ay any dues, fees, assessments, or other charges or expenses of any kind or amount, or provide anything of value to a labor organization or bargaining representative.”).
The commission’s current rules, however, affirmatively and expressly allow public collective bargaining agreements that provide for the collection of an agency shop fee from union-eligible employees who opt out of union membership. Civ Serv R 6-7.2 (last amended April 29, 2004) provides:
Nothing in this rule precludes the employer from making an agreement with an exclusive representative to require, as a condition of continued employment, that each eligible employee in the unit who chooses not to become a member of the exclusive representative shall pay a service fee to the exclusive representative. If agreed to in a collective bargaining agreement, the state may deduct the service fee by payroll deduction. An appointing authority shall not deduct a service fee unless the employee has filed a prior written authorization or as otherwise authorized in a collective bargaining agreement.
Plaintiffs, union representatives of classified civil service employees, contend that agency shop fees defray various union activity costs. In accordance with the current rules, plaintiff unions have negotiated various agreements with the state that contain agency shop fee arrangements covering the employees whom they represent.
*286 2012 PA 349 purports to make these mandatory agency shop fees illegal. Plaintiff labor unions filed the instant complaint in February 2013 challenging the validity of 2012 PA 349, § 3.[1] Plaintiffs alleged that, under Const 1963, art 11, § 5, the statute’s agency shop fee prohibition cannot apply to the commission because it infringes the commission’s constitutional mandate to “regulate all conditions of employment” for civil servants.
The Court of Appeals in a split decision held that the Legislature possesses the authority to enact legislation concerning and restricting agency shop fees. Int’l Union v Green, 302 Mich App 246; 839 NW2d 1 (2013). In reaching that conclusion, the Court of Appeals reasoned that the commission’s power to “regulate” conditions of employment is necessarily subservient to the Legislature’s power to “enact laws” relative to hours and conditions of employment. The dissent, on the other hand, would have held that agency shop fees are “conditions of employment” by virtue of being “on-duty employment concerns.” Id. at 294 (GLEICHER, J., dissenting).
STANDARD OF REVIEW
Questions of constitutional and statutory interpretation are reviewed de novo. Hunter v Hunter, 484 Mich 247, 257; 771 NW2d 694 (2009).
ANALYSIS
Our primary goal in construing a constitutional provision is to give effect to the intent of the people of the state of Michigan who ratified the Constitution, by *287 applying the rule of "common understanding.” See Goldstone v Bloomfield Twp Pub Library, 479 Mich 554, 558-559; 737 NW2d 476 (2007) (“When interpreting constitutional provisions, our primary objective is to realize the intent of the people by whom and for whom the constitution was ratified. That is, we seek the ‘common understanding’ of the people at the time the constitution was ratified. This involves applying the plain meaning of each term used at the time of ratification, unless technical, legal terms are used.”) (citations and quotation marks omitted). We identify the common understanding of constitutional text by applying the plain meaning of the text at the time of ratification. Wayne Co v Hathcock, 471 Mich 445, 468-469; 684 NW2d 765 (2004). Interpretation of a constitutional provision also takes account of “the circumstances leading to the adoption of the provision and the purpose sought to be accomplished.” People v Tanner, 496 Mich 199, 226; 853 NW2d 653 (2014) (citation and quotation marks omitted). Unless we are able to determine that a constitutional provision had some other particularized or specialized meaning in the collective mind of the 1963 electorate, we must give effect to the natural meaning of the language used in the Constitution. Mich United Conservation Clubs v Secretary of State (After Remand), 464 Mich 359, 376; 630 NW2d 297 (2001) (YOUNG, J., concurring). Technical legal terms are those that have acquired a special meaning and “must be interpreted in light of the meaning that those sophisticated in the law would have given those terms at the time of ratification.” Dep’t of Transp v Tomkins, 481 Mich 184, 191; 749 NW2d 716 (2008). The Address to the People, which was distributed to Michigan citizens in advance of the ratification vote and which explained in everyday language what each provision of the proposed new Con *288 stitution was intended to accomplish, Walker v Wolverine Fabricating & Mfg Co, Inc, 425 Mich 586, 597; 391 NW2d 296 (1986), and, to a lesser degree, the constitutional convention debates themselves are also relevant in determining the ratifiers’ intent. Lapeer Co Clerk v Lapeer Circuit Court, 469 Mich 146, 156; 665 NW2d 452 (2003).
“The Civil Service Commission is a constitutional body . . . .” Viculin v Dep’t of Civil Serv, 386 Mich 375, 393; 192 NW2d 449 (1971). It possesses “plenary and absolute powers in its field.” Id. at 398. The constitutional provision concerning the commission, Article 11, § 5, provides, in relevant part:
The Commission shall classify all positions in the classified service according to their respective duties and responsibilities, fix rates of compensation for all classes of positions, approve or disapprove disbursements for all personal services, determine by competitive examination and performance exclusively on the basis of merit, efficiency and fitness the qualifications of all candidates for positions in the classified service, make rules and regulations covering all personnel transactions, and regulate all conditions of employment in the classified service. [Const 1963, art 11, § 5, ¶ 4.]
Article 11, § 5 thus sets forth the “duties of the Civil Service Commission [.]” See Mich Coalition of State Employee Unions v Civil Serv Comm, 465 Mich 212, 221; 634 NW2d 692 (2001). The commission possesses authority over and exercises its duties concerning, in part, “the procedures by which a state civil service employee may review his grievance,” Viculin, 386 Mich at 393, as well as rates of compensation and conditions of employment. See Council No 11, AFSCME v Civil Serv Comm, 408 Mich 385, 406; 292 NW2d 442 (1980).
The commission’s rules authorize the use of public collective bargaining agreements as a mechanism for *289 exercising its constitutional authority over such matters as grievance procedures and rates of compensation. See, e.g., Civ Serv R 6-9.6(a) (“An exclusive representative and the employer may agree upon a procedure for the resolution of grievances of exclusively represented employees against the departmental employer..Civ Serv R 6-3.6(b) (“The rates of compensation for all existing grades within a classification of positions . . . may be established in a collective bargaining agreement. . .”). The commission retains absolute authority over the contents of a public collective bargaining agreement. Civ Serv R 6-3.1(b) (“The civil service commission retains the authority to (1) approve, modify, or reject, in whole or in part, a proposed collective bargaining agreement presented to it for review and (2) to impose on the parties and eligible employees a collective bargaining agreement as modified by the commission.”). This authority makes clear that the commission uses public collective bargaining as one important tool within its constitutional arsenal, establishing a procedure by which civil servants and the state employer may bargain over a variety of employment-related matters. This choice presumably reflects the commission’s judgment that it wishes to facilitate input from the employees’ representatives. If the commission deems public collective bargaining to be an appropriate mechanism for exercising its constitutional duties, that is its prerogative and we have no warrant to challenge this aspect of its exercise of authority. See Makowski v Governor, 495 Mich 465, 471; 852 NW2d 61 (2014), citing Marbury v Madison, 5 US (1 Crunch) 137, 170; 2 L Ed 60 (1803) (applying Marbury to Michigan’s three branches of government and stating that “courts may not inquire into how the executive or his officers perform their duties in which they have discretion”).
*290 Having established for the purposes of this case that the commission may authorize public collective bargaining as a tool in the exercise of its constitutional duties, we turn to the specific issue before us: whether the mandatory agency shop fee is consistent with such authorization. Although authorizing public collective bargaining agreements is within the commission’s sound judgment, we hold that the commission lacks the authority to tax or appropriate—to wit, the authority to compel civil service employees to make involuntary financial contributions to subsidize the commission’s exercise of its constitutional duties and responsibilities.
Generally, of course, the power to tax and appropriate rests exclusively with the Legislature. See 46th Circuit Trial Court v Crawford Co, 476 Mich 131, 141; 719 NW2d 553 (2006) (opinion by MARKMAN, J.); see also Const 1963, art 9, § 1 (“The legislature shall impose taxes sufficient with other resources to pay the expenses of state government.”). It has been stated:
The power to tax defines the extent to which economic resources will be apportioned between the people and their government, while the power to appropriate defines the priorities of government. Partly in recognition of the enormity of these powers, the framers of our constitutions determined that the branch of government to exercise these powers should be that branch which is closest to, and most representative of, the people [i.e., the Legislature]. [46th Circuit Trial Court, 476 Mich at 141-142 (opinion by Markman, J.).]
Indeed, we have recognized that this is “the most fundamental aspect of the ‘legislative power ....’” Id. at 141 (opinion by MARKMAN, J.). Therefore, in order for another constitutional body, such as the commission, to exercise the same powers that are historically vested *291 in our Legislature, the Constitution must affirmatively provide for them. See Soap & Detergent Ass’n v Natural Resources Comm, 415 Mich 728, 752-753; 330 NW2d 346 (1982).
In an unrelated, but illustrative, context, the commission actually enjoys such a narrow and highly distinctive power of appropriation. Paragraph 7 of Const 1963, art 11, § 5, expressly empowers the commission to increase civil servants’ rates of compensation by having that increase placed into the state’s annual budget. That increase becomes effective unless the Legislature vetoes the commission’s increase by a supermajority vote. In turn, when the commission opts to increase the payroll of employees in the civil service, the Constitution automatically increases the commission’s own administrative operational budget in direct proportion to the payroll increase. Const 1963, art 11, § 5, ¶¶ 7 and 10. Specifically, ¶ 10 of Const 1963, art 11, § 5 provides:
To enable the commission to exercise its powers, the legislature shall appropriate to the commission for the ensuing fiscal year a sum not less than one per cent of the aggregate payroll of the classified service for the preceding fiscal year, as certified by the commission. Within six months after the conclusion of each fiscal year the commission shall return to the state treasury all moneys unexpended for that fiscal year.
At the constitutional convention, this—the commission’s “privilege of a mandatory [administrative operational] appropriation”—was rightfully described as “extraordinary.” 1 Official Record, Constitutional Convention 1961, p 639 (stating that “[t]he commission does not appear to have abused its extraordinary privilege of a mandatory appropriation” in order to raise the payroll and, by extension, its own budget).
*292 But the commission’s limited and explicit power to appropriate its own administrative funding by adjusting budgeted rates of compensation stands in stark contrast to an asserted broad and implicit power to appropriate funds from whatever source. The former has textual support in the Constitution, while the latter does not. There is simply no authority in the Constitution that would support an argument that its ratifiers commonly and reasonably understood the commission as possessing the authority that plaintiffs ascribe to it—in particular, the power to require that assessments from civil servants’ paychecks additionally subsidize the commission’s own duties and responsibilities.
Reading this administrative funding provision in Article 11, § 5, ¶ 10 in context with the enumeration of the commission’s powers in ¶ 4 underscores that the ratifiers could not have contemplated that civil servants would serve as an alternative or additional source of funding for the commission’s budget. The only potential source of an authority to permit mandatory agency shop fees is the commission’s power to “regulate” the conditions of employment, which regulation is effected through public collective bargaining agreements. But the power to “regulate” does not encompass the specific authority to compel other entities, including civil servants themselves, to subsidize the commission’s constitutional operations. This authority is one of taxation and appropriation and is fundamentally legislative in character.
Indeed, the presence of the funding provision of Article 11, § 5, ¶ 10 serves to confirm this analysis, which concludes that the ratifiers must have understood, consistent with separation of powers principles, that the commission would be adequately funded by *293 the Legislature in proportion to the size of the civil service. In that paragraph, the Constitution provides the commission with the financial means “[t]o enable the commission to exercise its powers [.]” In other words, upon receiving an operating appropriation, which is scaled to one percent of the total payroll of all classified civil servants, the Constitution considers the commission “enable [d]” to exercise all of its powers— including its power to “regulate all conditions of employment in the classified service.” In light of the foregoing, the commission cannot simply provide itself with additional administrative operating funds as a function of its authority to “regulate.”[2] Instead, because the Constitution provides the commission with a source of funding “to enable [it] to exercise its powers,” the ratifiers must have reasonably understood that to be the commission’s exclusive source of funding. See Blank v Dep’t of Corrections, 462 Mich 103, 142 n 14; 611 NW2d 530 (2000) (MARKMAN, J., concurring) (“There is nothing unusual about the principle that language couched in terms of an affirmative grant can also reasonably imply a restriction.”); see also Cooley, Constitutional Limitations (1868), p 64 (“[W]here the means for the exercise of a granted power are given, no other or different means can be implied, as being more effective or convenient.”) (citation and quotation marks omitted). It follows then that the commission lacks the power to compel funding for its administrative operational duties from another and unstated source. Ac *294 cordingly, we hold that allowing the imposition of mandatory agency shop fees upon civil servants is beyond the commission’s constitutional authority.[3] Civ Serv R 6-7.2 is unconstitutional to the extent it allows the exaction of such fees.[4]
RESPONSE TO THE DISSENT
The dissent does not disagree with our conclusion that the commission lacks the authority to demand additional administrative operating funds from third parties. Rather, it is the dissent’s position that, because employees are forced to pay the agency shop fees directly to the unions, rather than to the commission itself, the fees “do not fund the commission’s ‘administrative operational duties’ to establish the conditions of employment” as we have reasoned.[5] We respectfully argue that the dissent misses the point of our analysis.
*295 The fact that, here, the agency fees are paid to the union does not change the fact that the commission permits collective bargaining in order to fulfill its constitutional obligation to regulate conditions of employment. Thus, using collective bargaining for that purpose provides a benefit that flows directly to the commission.[6] Contrary to the dissent’s assertion that “there has been no finding—not even an allegation— that agency fees fund [the commission’s] regulatory efforts,”[7] the commission’s own rules link collective bargaining directly to conditions of employment. Under Civ Serv R 6-2.1(d), “[t]he provisions of a collective bargaining agreement, when approved by the commission, become a subset of the civil service rules governing . . . conditions of employment for the eligible employees in the applicable unit.”[8] This is underscored by the commission’s absolute control over collective bargaining agreements, which renders them merely advisory until approved by the commission and illustrates that the commission is the true beneficiary of the collective bargaining process it has authorized in order to fulfill its constitutional regulatory obligation. Although the employers and employees may benefit from collective bargaining, those entities enjoy any such positive externalities at the grace of the commission.
As explained earlier, collective bargaining is one method by which the commission has chosen to exercise its obligation to “regulate all conditions of employment.” And this is the critical point in our analysis that *296 explains why the commission is the true beneficiary of the collective bargaining process: Unless collective bargaining was a proper method of regulating conditions of employment within the civil service, there would be no lawful basis for the commission to permit it at all. Stated differently, because the commission can permit collective bargaining, it follows that it does so as part of its own duty to regulate. The agency fees in turn exist to support that regulatory duty, regardless of who receives them.
Having chosen this method of regulating conditions of employment, what the commission cannot do is foist the administrative costs of that choice onto anyone else. This principle remains true regardless of who pays whom. What matters is who authorizes and receives the benefit. Illustratively, had the commission chosen another method by which to regulate conditions of employment—for example, by hiring a panel of consultant labor economists—no one would assert that the labor economists could then submit their invoice to the affected civil servants. That is precisely what the commission has done in passing on to civil servants the cost of regulating conditions of employment through the mechanism of collective bargaining.
The dissent further assigns significance to the fact that the commission authorizes, rather than requires, an employer to force its employees to pay agency shop fees. This does not affect our reasoning. The dissent cites no authority for the proposition that the commission can authorize an employer to do something that the commission itself cannot do.[9] Given the fact that collective bargaining can only exist as a means to *297 permit the commission to discharge its constitutional obligation, it is irrelevant that an employer retains the choice whether to require agency shop fees. When no agency shop fee is assessed, there is no constitutional problem. But whenever an employer opts to require the agency shop fee, the fee comes into existence as a mechanism to fund collective bargaining and, by extension, the commission’s regulatory obligations. Permitting agency shop fees is therefore impermissible for the reasons stated earlier.
It therefore remains unnecessary for us to respond to the dissent’s argument that 2012 PA 349 is prohibited by Const 1963, art 4, § 48.[10]
CONCLUSION
The authority of the Civil Service Commission is not without limits. Although public collective bargaining is a method by which the commission may choose to exercise its constitutional duties, it may not require collection of agency shop fees to fund its administrative operations in pursuit of those duties. The commission’s rules must yield to the Constitution when there is no authority for it to impose such fees. Accordingly, we affirm, albeit on different grounds, the judgment of the Court of Appeals.
MARKMAN, ZAHRA, and VIVIANO, JJ., concurred with YOUNG, C.J.

 Under § 10(6) of 2012 PA 349, the Court of Appeals exercises exclusive original jurisdiction over such actions. MCL 423.210(6).

 It may seem excessive to suggest that the commission might someday seek to use compelled contributions from civil servants in order to cover administrative costs other than those associated with public collective bargaining. However, absent affirmative constitutional authority, the premise of the commission’s supposed power to assess agency shop fees from civil servants has no apparent or necessary limiting principle that would preclude such an action.

 Because the commission’s power to “regulate” does not encompass the general legislative authority to tax or appropriate, we overrule Dudkin v Civil Serv Comm, 127 Mich App 397, 408-409; 339 NW2d 190 (1983), to the extent that it held that “imposition of an agency shop fee” is constitutionally authorized “pursuant to efficient civil service operations.”

 Given our holding that the commission may not impose mandatory agency shop fees on civil servants because it lacks the affirmative constitutional authority to do so under Const 1963, art 11, § 5, we need not consider whether it is also prohibited by 2012 PA 349 from doing the same. Thus, we need not address the meaning and breadth of “conditions of employment” in Article 4, § 49 and Article 11, § 5, or how the commission’s authority in Article 11, § 5 to “regulate all conditions of employment in the classified service” should be reconciled with the Legislature’s authority in Article 4, § 1 to exercise “[t]he legislative power of the State of Michigan” and its authority in Article 4, § 49 to “enact laws relative to . . . conditions of employment.” Furthermore, there is no need to address plaintiffs’ argument that 2012 PA 349 is inapplicable to civil servants as a function of its placement within PERA.

 Post at 303.

 Specifically, collective bargaining agreements relieve the commission of the burden of its constitutional responsibility to regulate particularized “conditions of employment for the eligible employees in the applicable unit.” Civ Serv R 6-2.1(d).

 Post at 303-304.

 Emphasis added.

 The dissent warns of “other conditions of employment” being “subject to invalidation by this Court as improper ‘appropriations!.]’ ” Post at 308. However, the instant holding is founded solely on the agency shop *297 fee’s unique relationship to the entire collective bargaining framework. “Other conditions of employment” are not before this Court.

 See note 4 of this opinion.