# STATE OF MICHIGAN

# COURT OF APPEALS

COALITION PROTECTING AUTO NO-FAULT,
BRAIN INJURY ASSOCIATION OF
MICHIGAN, ILENE IKENS, RICHARD IKENS,
KENNETH WISSER, SUSAN WISSER,
GREGORY WOLFE, and KAREN WOLFE,

FOR PUBLICATION
August 25, 2016

Plaintiffs-Appellees/Cross-
Appellants,

v

No. 314310
Ingham Circuit Court
LC No. 12-000068-CZ

MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION,

Defendant-Appellant/Cross-
Appellee.

ON REMAND

Before: OWENS, P.J., and BORRELLO and GLEICHER, JJ.

GLEICHER, J. (concurring in part and dissenting in part).

Two provisions before us, one statutory and one constitutional, serve a common purpose: to promote transparency in government. The core objective of the Freedom of Information Act (FOIA), MCL 15.231 *et seq.*, "is to provide the people of this state with full and complete information regarding the government's affairs[.]" *Practical Political Consulting, Inc v Secretary of State*, 287 Mich App 434, 462; 789 NW2d 178 (2010). Our Constitution's provision prescribing the manner in which statutes may be amended, Const 1963, art 4, § 25, prevents the Legislature from cloaking alterations of previously-enacted laws in garb "calculated to mislead the careless as to its effect[.]" *People v Mahaney*, 13 Mich 481, 497 (1865).

By inserting a FOIA exemption into a statute addressing certain operational mechanics of insurance "associations," the Legislature obscured from public view its significant diminution of the FOIA's reach. Because this piecemeal amendment contravenes our Constitution, I respectfully dissent.

Michigan's Freedom of Information Act is "a broadly written statute designed to open the closed files of government." *Kent Co Deputy Sheriffs Ass'n v Kent Co Sheriff*, 463 Mich 353,

359; 616 NW2d 677 (2000). Public bodies must disclose "public record[s]" sought under the act unless a specific statutory exemption shields the record from full disclosure. MCL 15.233(1). A "[p]ublic record" is "a writing prepared, owned, used, in the possession of, or retained by a public body in the performance of an official function, from the time it is created." MCL 15.232(e). The FOIA separates public records into two categories: "[t]hose that are exempt from disclosure under section 13," and "[a]ll public records that are not exempt from disclosure under section 13 and which are subject to disclosure under this act." MCL 15.232(e)(*i*) and (*ii*).[1] The majority correctly recognizes that Michigan's Catastrophic Claims Association (MCCA) is a "public body." It necessarily follows that unless exempted under § 13, the MCCA's public records are subject to disclosure under the FOIA.

Section 13 of the FOIA provides a comprehensive list of public records exempt from disclosure. The exemptions range far and wide, from certain trade secrets voluntarily provided to state agencies, MCL 15.243(1)(f), to "medical . . . facts" concerning an individual whose identity would be revealed by disclosure, MCL 15.243(1)(*l*), to "[i]nformation that would reveal the exact location of archaeological sites." MCL 15.243(1)(o). Notwithstanding the breadth of the exemptions' subject matters, the exceptions themselves are tightly circumscribed. For example, to warrant exemption, a trade secret must fulfil three separate and distinct criteria.[2] Although information revealing the "exact location of archaeological sites" need not be revealed, "[t]he department of history, arts, and libraries may promulgate rules . . . to provide for the disclosure of the location of the" sites to further "preservation or scientific examination[.]"

The general thrust of the FOIA is strongly pro-disclosure. Its exemptions are judiciously drawn and are to be "narrowly construed, and the party asserting the exemption bears the burden of proving that the exemption's applicability is consonant with the purpose of the FOIA." *Detroit Free Press, Inc v Dep't of Consumer & Indus Servs*, 246 Mich App 311, 315; 631 NW2d 769 (2001). The FOIA does not exempt records created by the MCCA from public disclosure.

---

[1] Section 13 is MCL 15.243.

[2] Trade secrets or commercial or financial information voluntarily provided to an agency for use in developing governmental policy [are exempt from disclosure] if:

(*i*) The information is submitted upon a promise of confidentiality by the public body.

(*ii*) The promise of confidentiality is authorized by the chief administrative officer of the public body or by an elected official at the time the promise is made.

(*iii*) A description of the information is recorded by the public body within a reasonable time after it has been submitted, maintained in a central place within the public body, and made available to a person upon request. This subdivision does not apply to information submitted as required by law or as a condition of receiving a governmental contract, license, or other benefit. [MCL 15.243(1)(f).]

Nor does the FOIA extend blanket immunity from disclosure of public records to any specific "public body." Rather, the FOIA permits the Legislature to exempt "[r]ecords or information *specifically described*" from disclosure. MCL 15.243(1)(d) (emphasis added).

The Legislature adopted the automobile no-fault act, MCL 500.3101 *et seq.*, in 1972. In 1978, the Legislature amended the no-fault act by establishing the MCAA "as the means for reimbursing each member insurer for all 'ultimate loss sustained under personal protection insurance coverages in excess of $250,000 in each loss occurrence.' " *League Gen Ins Co v Mich Catastrophic Claims Ass'n*, 435 Mich 338, 341; 458 NW2d 632 (1990), citing MCL 500.3104(2). Aptly, the Legislature located this amendment of the no-fault act within the no-fault act. The duties and obligations of the MCAA are also found within the no-fault act. MCL 500.3104.

In 1988, the Legislature amended section 134 of the Insurance Code, MCL 500.134, by enacting PA 349. The act's preamble states that it was intended "to regulate the incorporation or formation of domestic insurance and surety companies and associations" and to "provide their rights, powers, and immunities and to prescribe the conditions on which companies and associations organized, existing, or authorized under this act may exercise their powers . . . ."[3] Among the added provisions was § 134(4), which provides:

> A record of an association or facility shall be exempted from disclosure pursuant to section 13 of the freedom of information act, Act No. 442 of the Public Acts of 1976, being section 15.243 of the Michigan Compiled Laws. [MCL 500.134(4).]

Instead of amending the FOIA's listed exemptions to include "a record of" the MCCA, the Legislature inserted a brand new FOIA exemption into a portion of the Insurance Code generally addressing a variety of organizational issues relevant to "associations" governed by the code.

Const 1963, art 4, § 25 provides simply:

> No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length.

Specifically referencing the FOIA, MCL 500.134(4) purports to exempt "[a] record of an association" from public disclosure. The Legislature located this obvious amendment of the FOIA in a statute unconnected to the FOIA, failed to add the exemption to the FOIA, and neither reenacted nor published at length § 13 of the FOIA which it (1) referenced by its title only, and (2) "revised, altered [and] amended" by adding a brand new category of information excused from disclosure. Prevention of this legislative legerdemain is precisely the object of art 4, § 25.

---

[3] "A preamble is not to be considered authority for construing an act, but it is useful for interpreting statutory purpose and scope." *King v Ford Motor Credit Co*, 257 Mich App 303, 311-312; 668 NW2d 357 (2003).

"Our primary goal in construing a constitutional provision is to give effect to the intent of the people of the state of Michigan who ratified the Constitution, by applying the rule of 'common understanding.' " *UAW v Green*, 498 Mich 282, 286-287; 870 NW2d 867 (2015). "We identify the common understanding of constitutional text by applying the plain meaning of the text at the time of ratification." *Id*. at 287. The task is made somewhat easier here, as art 4, § 25 of the 1963 Constitution is virtually identical to article 4, § 25 of the 1850 Constitution. "Except for some punctuation and some rearrangement of words in the latter half of the provision, this language has continued through to this date (also see 1908 Const art 5, §§ 21, 22)." *Advisory Opinion re Constitutionality of 1972 PA 294*, 389 Mich 441, 469-470; 208 NW2d 469 (1973). The seminal opinion construing this constitutional provision, also found in many other state constitutions,[4] was authored by Justice Thomas M. Cooley.

In *Mok v Detroit Bldg & Savings Ass'n No 4*, 30 Mich 511, 516 (1875), Justice Cooley explained that "the evil" which art 4, § 25 "was meant to remedy was one perpetually recurring, and often serious."

> Alterations made in the statutes by mere reference, and amendments by the striking out or insertion of words, without reproducing the statute in its amended form, were well calculated to deceive and mislead, not only the legislature as to the effect of the law proposed, but also the people as to the law they were to obey, and were perhaps sometimes presented in this obscure form from a doubt on the part of those desiring or proposing them of their being accepted if the exact change to be made were clearly understood. Harmony and consistency in the statute law, and such a clear and consecutive expression of the legislative will on any given subject as was desirable, it had been found impracticable to secure without some provision of this nature; and as the section requires nothing in legislation that is not perfectly simple and easily followed, and nothing that a due regard to clearness, certainty and simplicity in the law would not favor, it is probable that if the requirement has at any time been disregarded by the legislature, the default has proceeded from inadvertence merely. [*Id*. at 516-517.]

The constitutional provision, Justice Cooley continued, "requires each act of legislation to be complete in itself, and forbids the enactment of fragments which are incapable of having effect or of being understood until fitted in to other acts after by construction or otherwise places have been made for them. No such legislation can be sustained." *Id*. at 529.

Fast forwarding 130 years, this Court applied art 4, § 25 in a case bearing remarkable similarity both to *Mok* and the matter now before us. In *Nalbandian v Progressive Mich Ins Co*, 267 Mich App 7; 703 NW2d 474 (2005), we determined that the Legislature contravened the Constitution by amending § 2103(4)(a)(*iii*) of the Insurance Code, MCL 500.2103(4)(a)(*iii*), without reenacting or republishing the code. The pertinent section of the Insurance Code permitted insurance companies to calculate premium rates based on "insurance eligibility points" assessed for an insured's speed limit violations. *Id*. at 9. Two eligibility points could be

---

[4] See 1A Sutherland Statutory Construction § 22:16 (7th ed).

assessed against a driver who violated the speed limit by 10 miles per hour or less. *Id*. "Notwithstanding that then-existing provision, the Legislature amended the vehicle code in 1987, and added a provision disallowing the imposition of any insurance eligibility points for ten mile per hour (or less) speed limit violations in one specific instance[.]" *Id*. Thus, the practical effect of the amended vehicle code provision was an amendment of the Insurance Code. Drawing primarily on Justice Cooley's reasoning in *Mok*, this Court rejected the argument that the Legislature had accidentally amended the vehicle code. We stressed:

> The conflict between the two is not one resulting from mere inadvertence. To the contrary, vehicle code § 628(11)[, MCL 257.628(11),] quite clearly resulted from a legislative knowledge of the Insurance Code's 2-point rule and an intent to abrogate that rule with respect to 55 mile per hour speed zone violations. The 55 mph speed zone exception constitutes a "fragment[ary]" attempt to "accommodate [the 2 point rule] by [an] indirect amendment[ ]" that can only be understood or given effect by "fitt[ing]" the two acts together. . . . " 'No such legislation can be sustained.' " [*Alan v Wayne Co*, 388 Mich 210, 272; 200 NW2d 628 (1972)], quoting *Mok*, [30 Mich] at 529. "[W]hen the Legislature intends to amend a previous act, it must do so in conformance with the plain and unequivocal requirements of . . . Const 1963, art 4, § 25." *Alan*, [388 Mich] at 275. [*Id*. at 14.]

The majority attempts to distinguish *Nalbandian* and *Mok* by asserting that the amendment to the Insurance Code exempting the MCCA from the FOIA "did not undertake to 'dispense with some things required' by [the] FOIA, it did not 'make some changes' to [the] FOIA, nor did it incorporate [the] FOIA and 'accommodate it by indirect amendments.' " Though the majority has accurately quoted *Mok*, it misunderstands the effect of MCL 500.134(4). Contrary to the majority's conclusions, the statute does indeed " 'make some changes' to the [the] FOIA"; the Legislature admitted as much by expressly referencing the exemption section of the FOIA when it amended § 134(4). Indeed, § 134(4) works a sea change in the FOIA as it privileges from disclosure the entirety of the information held by a "public body," rather than "specifically describ[ing]" the records or information exempted. See 15.243(1)(d).

The majority's next statement—that § 134(4) "is not a 'piecemeal amendment to an existing comprehensive statutory scheme' "—is simply untrue. Indisputably, the FOIA is a "comprehensive statutory scheme." By exempting the MCCA from the FOIA, the Legislature modified the FOIA in a fragmentary fashion. No one reading the FOIA's exemptions would understand that yet another exemption exists in the depths of the Insurance Code. In my view, this form of statutory amendment fully qualifies as "piecemeal."[5]

---

[5] The Michigan Supreme Court declared in *Alan*, 388 Mich at 281: "*Mok* stands for the rule that you *cannot* amend statute C even by putting in statute B specific words to amend statute C, unless you republish statute C as well as statute B under Const 1963, art 4, § 25." (Emphasis in

Nor am I persuaded that because § 13(1)(d) of the FOIA permits the Legislature to create additional exemptions, § 134(4) passes constitutional muster. Article 4, § 25 plainly provides that the Legislature may not revise, alter or amend a law by reference to its title only, as was done here. Rather, "[t]he section or sections of the act altered or amended" must be "re-enacted and published at length." The Legislature failed to take this constitutionally necessary step. The majority has not explained how the Legislature may arrogate unto itself a Constitutional bypass by inserting some "magic words" into a statute.

The Legislature certainly may amend or revise the FOIA. When it created a new FOIA exemption in a statutory section unrelated to the FOIA—while nevertheless referring to the FOIA—the Legislature overlooked its constitutional obligation to undertake a more labor-intensive amendatory step: reenacting and republishing the exemption section of the FOIA. A citizen (or legislator) reading the FOIA would have no reason to know that a covert FOIA exemption hides within the Insurance Code. This is the amendatory obfuscation that art 4, § 25 forbids. As Justice Cooley put it:

> The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. [*Mahaney*, 13 Mich at 497.]

I would hold that because MCL 500.134(4) offends our Constitution's reenact-publish clause, article 4, § 25, it cannot be enforced.

/s/ Elizabeth L. Gleicher

original.) If one substitutes the FOIA for "statute C" and MCL 500.134(4) for "statute B," the flaw in the majority's reasoning becomes obvious.